IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

SURIMA SUAREZ CESTERO, et al.,        *
                                      *
        Plaintiffs,                   *
                                      *
v.                                    *        CIVIL NO. 97-2251, (JP)
                                      *
DANIEL PAGAN ROSA, et al.,            *
                                      *
        Defendants                    *
_____ *

## OPINION AND ORDER

### I.    INTRODUCTION

The Court currently has before it Defendants' Motion to Dismiss (**docket No. 119**)[1], Defendant Ferdín Carrasquillo's Motion Subscribing Motion to Dismiss (**docket No. 122**)[2], and Plaintiffs' Motion for Entry of Default and Opposition to Motion to Dismiss (**docket No. 125**). Defendants allege that the Court should dismiss the case because Plaintiffs' permits have expired, previous dismissal of the injunctive relief claims by Judge Juan M. Pérez-Giménez, mootness, preclusion, and immunity. Plaintiffs in their opposition thereto

---

[1] Originally, claims were brought against Defendants Daniel Pagán, Carmelo Correa, Ferdín Carrasquillo and Pedro Toledo in both their official and personal capacities. Judge Juan M. Pérez-Giménez dismissed the claims against Pagán, Correa and Toledo, in their official capacities, pursuant to 11th Amendment immunity. The claims against them, in their personal capacities, remain before the Court. The claims against Carrasquillo, both in his official and personal capacity, also remain before this Court. On June 6, 2001, Plaintiffs filed an Amended Complaint, which included two new defendants. The Department of Justice appeared on June 4, 2001 on behalf of current Natural Resources Department Secretary, and new Defendant Carlos Padín, and previous Defendants Pagán, Correa, Carrasquillo and Toledo, all in their personal capacities. An appearance was made on behalf of new Defendant Pierre Vivoni on July 13, 2001. The instant Motion to Dismiss was filed by the Department of Justice on behalf of all Defendants in their personal capacities.

[2] Co-Defendant Carrasquillo, in his official capacity, is not being represented by the Department of Justice, and has retained separate counsel




CIVIL NO. 97-2251 (JP)          2

allege Defendants are barred from bringing forth these claims by the doctrine of law of the case[3], and ask the Court to enter default against all Defendants (except Defendant Carrasquillo) for failure to answer the Amended Complaint.  For the reasons herein stated, both Defendants' motions are hereby **GRANTED IN PART AND DENIED IN PART,** Plaintiffs' Motion for entry of default is **DENIED,** and their Opposition to Defendants' Motion to Dismiss is **GRANTED IN PART AND DENIED IN PART.**

## II.   PROCEDURAL AND FACTUAL BACKGROUND

Plaintiffs in this action are the heirs of Marcial Suárez and Encarnación Fuentes, and the Estates of Marcial Suárez and Encarnación Fuentes (collectively "The Estates").[4]  They are the owners of a parcel of land located in the Medianía Baja Ward of the Municipality of Loíza (hereinafter, "the property").  In addition to her interest in the property as a member of the Estate, Attorney Surima Suárez (hereinafter, "Suárez") has a contract with the Estates for the extraction of sand from the property.  Plaintiffs allege that the extraction of the sand from the property is the first phase of a residential project being developed by the Estates called Lago del

---

[3] The law of the case rules have developed to maintain consistency and avoid reconsideration of matters once decided during the course of a single lawsuit. They do not involve preclusion by final judgment; instead, they regulate judicial affairs before final judgment.  See 18 Wright, Miller & Cooper, Federal Practice and Procedure Jurisdiction § 4478 (2001).

[4] The Estates are comprised of the following people:  Aida Miranda Cabrera, Juan Suárez Miranda, Melba Priscilla Suárez Gutiérrez, Marcial Enrique Suárez Suárez, Clarisa Suárez de la Cruz, Marcial Eligio Suárez Vázquez, Argentina Candelaria Hernández, Serena Herminia Suárez Candelaria, Eduardo Cándido Suárez Dávila, Lydia Encarnación Suárez Dávila, and Surima Suárez Cestero.

CIVIL NO. 97-2251 (JP)          3

Palmar.

To that end, Plaintiffs announced the project and obtained all
the permits necessary from all the relevant entities for its
completion.   Plaintiffs were also required to obtain an additional
permit to extract sand, insurance in the amount of $1,000,000.00 (One
Million Dollars), and to post a performance bond in the amount of
$879,000.00 (Eight Hundred Seventy-Nine Thousand Dollars) to restore
the property to its original condition in case the project was not
completed.

On April 29, 1997, the Municipality of Loíza and its Mayor
Ferdín Carrasquillo filed a civil action in the Commonwealth of
Puerto Rico Court of First Instance, Carolina Part, Civil No. FPE97-
0332(401), to enjoin the sand removal, claiming that the Lago del
Palmar project was a subterfuge for sand removal and that Suárez
never intended to complete the same.   The Commonwealth court then
went on to issue a temporary restraining order after a hearing on May
12, 1997.

During that same month of May 1997, several protests took place
at the entrance of Plaintiffs' property.   Trucks and machinery
belonging to the Municipality of Loíza were parked at the entrance
to the property, where they allegedly blocked the entrance and
departure of trucks and people working on the project and prevented
the sand removal from continuing.   Carrasquillo and co-Defendant
Correa were present.   Plaintiffs wrote and delivered a letter to co-
Defendant Toledo regarding the problem, to no avail.   In August 1997,

CIVIL NO. 97-2251 (JP)        4

and after a lengthy hearing, the Commonwealth court denied the motion for injunctive relief and dismissed the Municipality's complaint. The Municipality appealed, and the Court of Appeals affirmed. The Municipality appealed to the Supreme Court of Puerto Rico and it granted *certiorari*.

At the administrative level, concurrent procedures regarding the sand extraction controversy were also initiated in March 1997, when hearings were held in which various people, including co-Plaintiff Suárez, testified. The hearing examiners then issued a report concluding that the sand extraction activities represented a grave threat to public safety and recommended that sand extraction be paralyzed until integrated and rigorous technical studies were completed. The examiners further recommended that Suárez's permits be revoked. As part of an administrative procedure, on June 6, 1997, the Secretary of the Department of Natural Resources and the Environment (the "DNRE") Daniel Pagán, issued a Cease and Desist Order against Suárez enjoining her from further sand removal and ordering her to show cause as to why her permits should not be modified and/or revoked. Secretary Pagán claimed that, after an on-site inspection, a violation of the permits was detected and that consequently, her permits should be revoked.

After the Commonwealth court dismissed the complaint against Suárez, she informed the DNRE she was going to resume the sand extraction, since the Cease and Desist Order had no legal validity because the Municipality's action had been dismissed. On August 8,

CIVIL NO. 97-2251 (JP)        5

1997, Secretary Pagán notified Suárez that the administrative proceedings against her were to continue and that any request or petition should be presented by motion in the administrative case. Suárez then requested that the administrative case be dismissed, and Pagán refused, insisting that the DNRE proceeding was different and separate from the Commonwealth court proceeding. When Secretary Pagán refused to vacate his Cease and Desist Order, Suárez and the Estates filed the Verified Complaint and Request for a Temporary Restraining Order, Preliminary and Permanent Injunction in the instant case on August 19, 1997 against Secretary Pagán, Police Chief Pedro Toledo, Police Commander Carmelo Correa and Loíza Mayor Ferdín Carrasquillo.

Judge Juan M. Pérez-Giménez requested briefs on the issues, mainly the allegations concerning: jurisdiction, abstention, ripeness, and immunity, and set a hearing for September 24, 1997. The day before the hearing on injunctive relief was to be held, Governor Pedro Rosselló signed into law Joint Resolution of the Senate No. 398, which caused a moratorium on sand extraction in Loíza for one year. The hearing was held as scheduled.

In its Opinion and Order issued on February 24, 1998, the Court dismissed Plaintiffs' request for injunctive relief as moot, the takings claims as unripe, and the claims against several of the Defendants in their official capacities pursuant to 11th Amendment immunity. The Court then requested briefs regarding qualified immunity as it related to the remaining constitutional claims.

CIVIL NO. 97-2251 (JP)         6

Plaintiffs' appealed the ruling and the First Circuit affirmed.

On June 6, 2001, Plaintiffs filed an Amended Complaint. In it, they re-alleged their claim for injunctive relief against all parties, re-alleged the claims of violations of Plaintiffs' constitutional rights, and re-alleged all causes of action against all the wives of the previous Defendants and their conjugal partnerships. The claim also brought in two new parties, Carlos Padín Bibiloni in his official capacity as current Secretary of the DNRE, as well as his wife and their conjugal partnership, and Pierre Vivoni in his official capacity as Superintendent of the Puerto Rico Police Department, as well as his wife and their conjugal partnership. Both of them were sued for injunctive relief only. Plaintiffs claim damages in the amount of approximately sixty (60) million dollars.

On June 13, 2001, the Supreme Court of Puerto Rico issued a Judgment whereby it ordered the Plaintiffs in the instant case (Defendants in that action), to cease all sand extraction operations while they obtained the necessary permits to lawfully carry out their operations. Specifically, the Supreme Court held the Estates had not made the necessary environmental impact statement before beginning the sand extraction as required by law, and therefore found their permits were not valid. Consequently, it granted the permanent injunction in favor of the Municipality of Loíza.

**III. STANDARD**

When addressing a motion to dismiss brought under Rule 12(b)(6),

CIVIL NO. 97-2251 (JP)          7

a Court must "accept as true all well-pleaded factual averments and indulge all reasonable inferences in the Plaintiff's favor." <u>Doyle v. Hasbro, Inc.</u>, 103 F.3d 186, 190 (1st Cir. 1996). Dismissal under Rule 12(b)(6) is "appropriate if the facts alleged, taken as true, do not justify recovery." <u>Id.</u> The standard is not quite as feeble as first appears:

> The pleading requirement . . . is not 'a toothless tiger.' [citations omitted]. The threshold for stating a claim may be low, but it is real. [citations omitted]. In order to survive a motion to dismiss, Plaintiffs must set forth factual allegations, either direct or inferential, regarding each material element necessary to sustain recovery. [citations omitted]. Although all inferences must be made in the Plaintiffs' favor, this Court need not accept 'bald assertions, unsupportable conclusions, periphrastic circumlocutions, and the like.' [citations omitted].

<u>Id.</u>   To put it simply, the Court must look leniently at the allegations in the Plaintiffs' complaint and determine if those allegations "can reasonably admit of a claim." <u>Id.</u>

## IV. ANALYSIS

The Court makes out Defendants' argument to be that the Court should dismiss the instant case because: 1) there is currently no administrative proceeding against Plaintiff Suárez due to the fact that the permits granted her by the DNRE have expired and therefore the claim is moot; 2) abstention; 3) Plaintiffs' claims for injunctive relief were dismissed by Judge Juan M. Pérez-Giménez; 4) preclusion; and 5) since Defendants' immunity claims might dispose of the case, the Court should adjudicate the same and dismiss the case. Plaintiffs in their opposition thereto allege that Defendants'

CIVIL NO. 97-2251 (JP)          8

abstention claims are barred by the doctrine of law of the case, and ask the Court to enter default against all Defendants (except Defendant Carrasquillo) for failure to answer the Amended Complaint. The Court addresses each of the claims in turn.

    1.   <u>The DNRE Administrative Proceeding</u>

    Defendants claim in their Motion to Dismiss that Plaintiffs claim is moot because there is currently no administrative proceeding pending against co-Plaintiff Suárez.  They allege that Plaintiffs' permits became inoperative because of the moratorium imposed by the legislature, and further allege that "during said period, or at present, the DNRE permit originally granted to Plaintiff expired." Consequently, Defendants argue, since the permit expired, any issue concerning the violation of that permit became moot.  Defendants allege the DNRE dismissed the proceeding <u>because</u> Plaintiffs' claims were rendered moot with the moratorium.  Therefore, under Defendants' theory, the claim should have been dismissed in 1998.  However, administrative proceedings were taking place up until <u>March 14, 2001</u>. See <u>Motion Regarding Appearance at Hearing of March 14, 2001</u> filed in that administrative proceeding by Attorney Laura González Lugo on behalf of Surima Suárez Cestero on that same date, and the barrage of documents that preceded it.

    Defendants have failed to realize that, even with no administrative proceeding pending, <u>see</u> section 2, <u>infra</u>, and the mootness of Plaintiffs' equitable claim, <u>see</u> section 3, <u>infra</u>, there are still constitutional claims pending before this Court as raised

CIVIL NO. 97-2251 (JP)          9

by Plaintiffs in their Amended Complaint, namely, the allegations concerning the violations of Plaintiffs' due process rights. Therefore, the Court finds this claim to be without merit.

2.    Abstention

The thrust of Defendants' motion centers around the abstention doctrines as stated by the Supreme Court in Younger v. Harris, 401 U.S. 37, 44, 91 S. Ct. 746, 750, 27 L.Ed.2d 669 (1971) and its progeny.  Defendants argue in their motion that this Court should abstain from this case in deference to state administrative and judicial proceedings, and refuse to exercise jurisdiction. Plaintiffs allege that the law of the case precludes Defendants from making this claim.  We decline to accept Defendants' invitation, albeit on different grounds.

It is clearly established that federal courts have an almost unflagging duty to exercise jurisdiction conferred upon them by Congress.  Colorado River Water Conservation Dist. v. United States, 424 U.S. 800, 817 (1975).  Abstention is the exception, not the rule. Quackenbush v. Allstate Ins. Co., 116 S. Ct. 1712, 1720 (1996); see also County of Allegheny v. Frank Mashuda Co., 360 U.S. 185, 188 (1959) ("Abstention remains an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it.")  It is only in exceptional circumstances, and when there are important countervailing state interests, that a federal court can decline to exercise its jurisdiction.  Id. at 1720-21.  We find

CIVIL NO. 97-2251 (JP)          10

these circumstances are not present here, and therefore hold that abstention is not warranted in this instance.

Underlying our federal system is a presumption that the state courts are as capable as their federal counterparts of guaranteeing federal rights.  See Middlesex Ethics Comm. v. Garden State Bar Ass'n, 457 U.S. 423, 431, 102 S. Ct. 2515, 2521, 73 L.Ed.2d 116 (1981) ("Minimal respect for the state processes, of course, precludes any presumption that the state courts will not safeguard federal constitutional rights."); Sumner v. Mata, 449 U.S. 539, 549, 101 S. Ct. 764, 770, 66 L.Ed.2d 722 (1981) ("State judges as well as federal judges swear allegiance to the Constitution of the United States, and there is no reason to think that because of their frequent differences of opinions as to how that document should be interpreted, all are not doing their mortal best to discharge their oath of office.")

Related to this presumption of equal competency is the concept of comity, which counsels federal courts to be sensitive to the existence of a parallel system of state governance. See Younger, 401 U.S. at 44.  "Comity entails a proper respect for state functions, a recognition of the fact that the entire country is made up of a union of separate state governments, and a continuance of the belief that the National Government will fare best if the States and their institutions are left free to perform their separate functions in their separate ways."  Id.

CIVIL NO. 97-2251 (JP)          11

One of the many ways federal courts demonstrate comity is by refusing to grant relief whenever doing so would interfere substantially with ongoing state judicial proceedings. In <u>Younger</u>, the Supreme Court held that the federal courts must defer to ongoing state criminal proceedings. Since then, deference has been similarly required to ongoing, state ordained civil and administrative proceedings that satisfy three conditions: 1) the proceedings are judicial (as opposed to legislative) in nature; 2) they implicate important state interests; and 3) they provide adequate opportunity to raise federal constitutional challenges and defenses. <u>See Middlesex,</u> 457 U.S. at 432 (1981) (applying <u>Younger</u> doctrine to civil proceedings); and <u>Bettencourt v. Bd. of Registration in Medicine of the Commonwealth of Massachusetts</u>, 904 F.2d 772 (1st Cir. 1990) (applying <u>Younger</u> doctrine to administrative proceedings).

However, the <u>Younger</u> doctrine comes into play only when there is an ongoing state or administrative proceeding that Plaintiffs seek to enjoin. <u>See Duty Free Shop v. Administración de Terrenos</u>, 889 F.2d 1181, 1183 (1st Cir. 1989) (Purpose behind <u>Younger</u> abstention is a reluctance to interfere with an ongoing state judicial proceeding); and <u>New Orleans Public Serv., Inc., v. Council of New Orleans</u>, 491 U.S. 350 (<u>Younger</u> abstention applies to ongoing administrative proceedings that are judicial in nature).

On June 13, 2001, the Supreme Court of Puerto Rico issued a Judgment whereby it ordered Defendants, Plaintiffs in the instant case, to cease all sand extraction operations while they obtained the

CIVIL NO. 97-2251 (JP)          12

necessary permits to lawfully carry out their operations. Municipio de Loíza v. Sucesiones de Marcial Suárez y Encarnación Fuentes, No. CC-1999-0833, 2001 WL 669629 at *1 (P.R. June 13, 2001). Therefore, by virtue of that Judgment, which conclusively decided the permits issue, there is no current ongoing state proceeding. Regarding the administrative proceeding instituted by the DNRE, by Defendants' own admission, there is no ongoing administrative proceeding in the case at bar, since Defendants themselves dismissed it. See Defendants' Motion to Dismiss, (docket No. 119), and Defendants' Initial Scheduling Conference Memorandum, (docket No. 120). Therefore, from the outset, the most fundamental requirement to trigger Younger is not met. Without any administrative or state parallel proceeding, Defendants' arguments that this Court abstain are not applicable, and consequently, the Court finds that an abstention under Younger is not warranted.

Defendants also allege that under the Puerto Rico Law of Uniform Administrative Procedure, P.R. Laws Ann. tit. 3, § 2101, et. seq., a party adversely affected may appeal a decision before the Court of Appeals, and therefore, since Plaintiffs can appeal the administrative proceeding judgment, a state court proceeding is available to Plaintiffs to litigate their § 1983 claim. Consequently, they allege that this Court must abstain from entertaining this claim. That argument also has no merit, since it is parties that are adversely affected by the judgment who must appeal. See P.R. Laws Ann. tit. 3, § 2165 (2000).

CIVIL NO. 97-2251 (JP)        13

The Order that was handed down by the DNRE dated March 26, 2001, ordered the dismissal with prejudice of the Cease and Desist Order. See Order of DNRE, Case No. 97-222-CT.  By definition, then, Plaintiffs were not adversely affected by the dismissal; in fact, they benefitted from it, since they had sought dismissal of the action since its inception.  See Amended Complaint.  It is Defendants who were adversely affected, since the Order was dismissed with prejudice.  Consequently, Defendants' argument that a state forum to review and raise Plaintiffs' § 1983 claims is available to them has no merit.

For the aforementioned reasons, the Court concludes that Defendants' claim under Younger cannot lie because it fails to meet the most basic abstention requirement expounded in that case:  an ongoing state or administrative proceeding.  Consequently, Defendants' claim that this Court abstain is hereby **DENIED**.

    3.    The Equitable Claim

Defendants claim that Plaintiffs are barred from re-alleging their claim for equitable relief because Judge Pérez-Giménez had previously dismissed the same in his Opinion and Order of February 23, 1998.  The Court finds Defendants' allegations to be in error.

Plaintiffs appealed the decision rendered by Judge Pérez-Giménez dismissing the claim for injunctive relief, among other claims, and the First Circuit affirmed that decision.  See Surima Suárez Cestero, et. al. v. Daniel Pagán Rosa, et. al., 172 F.3d 102 (1st Cir. 1999). However, because of the unique claim presented in this case, where

CIVIL NO. 97-2251 (JP)        14

a petition for an injunction was rendered moot by a one year moratorium, the First Circuit left that avenue open to Plaintiffs when it stated that: "Nevertheless, to the degree that the moratorium is no longer in existence, the Plaintiffs can renew their request for temporary equitable relief; and the time to consider permanent injunctive relief will come at the close of the case, and will not be foreclosed by either the lower court's ruling or by this Court's opinion". Suárez Cestero, 172 F.3d at 104.

Therefore, if Defendants are alleging that Plaintiffs cannot re-file their injunctive relief claim, as Plaintiffs have done, because the District Court had previously dismissed that claim as moot, the First Circuit opinion clearly indicates Defendants' claims are in error.

However, the Court would like to point out that, as previously mentioned, on June 13, 2001, the Supreme Court of Puerto Rico issued a Judgment whereby it ordered Defendants, Plaintiffs in the instant case, to cease all sand extraction operations while they obtained the necessary permits to lawfully carry out their operations. Municipio de Loíza, 2001 WL 669629, at *16. Specifically, the Court held the Estates had not made the necessary environmental impact statement before beginning the sand extraction as required by law, and therefore granted the permanent injunction in favor of the Municipality of Loíza. Id.

We concur with the opinion of the First Circuit as stated in Suárez Cestero, 172 F.3d at 104, that Plaintiffs' interest in

CIVIL NO. 97-2251 (JP)        15

injunctive relief, and therefore the threat of irreparable harm, was abolished when the Legislature passed the moratorium. "Irreparable harm is a necessary precondition to a preliminary injunction and, given the moratorium on sand extraction in place, none exists here". Id. at 104. The First Circuit then went on to state that Plaintiffs' equitable claim was therefore moot and that they were not entitled to a preliminary injunction. Id.

We find the same reasoning applicable in this case. When the Supreme Court issued its Judgment, Plaintiffs' interest in injunctive relief and the threat of irreparable harm was also abolished. Enjoining Plaintiffs' activities until they obtain the pertinent permits as required by law has the same effect as the moratorium on sand extraction imposed by the Legislature in 1998. However, like the First Circuit, this Court finds that if and when Plaintiffs obtain all the necessary permits to extract sand, they can proceed to renew their request for temporary relief. Therefore, Plaintiffs' equitable claim is hereby **DISMISSED WITHOUT PREJUDICE.**

Plaintiffs' Amended Complaint also stated causes of action for injunctive relief against Carlos Padín Bibiloni in his official capacity as current Secretary of the DNRE, as well as his wife and their conjugal partnership, and Pierre Vivoni in his official capacity as Superintendent of the Puerto Rico Police Department, as well as his wife and their conjugal partnership. By virtue of the aforementioned dismissal of the equitable claim, Plaintiffs' claims

CIVIL NO. 97-2251 (JP)        16

for injunctive relief against these two Defendants have been rendered moot, and are therefore also **DISMISSED WITHOUT PREJUDICE**.

    4.   <u>Entry of Default</u>

In their motion, Plaintiffs ask the Court to enter default in their favor for Defendants' failure to answer the Amended Complaint. <u>See</u> footnote 1, <u>*supra*</u>. However, it is clearly established that a district court is afforded great discretion in entering default. <u>See</u> 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, <u>Federal Practice and Procedure Civil 2d</u> § 2685 (1998) (the decision to enter default is a decision committed to the "sound judicial discretion" of the judge). Among the many considerations a court can take into account in order to enter default is whether a substantial sum of money is involved. <u>See</u> <u>Independent Oil & Chemical Workers v. Procter & Gamble Mfg. Co.</u>, 864 F.2d 927 (1st Cir. 1988).

The case at bar presents a series of important issues, namely allegations of constitutional rights violations by several government officials, and damages claims for those violations in the amount of approximately SIXTY MILLION DOLLARS ($60,000,000.00) <u>See Amended Complaint</u>. The general disfavor in which default judgments are held in the law, 10A Wright, Miller & Kane, <u>Federal Practice and Procedure Civil 3d</u> § 2681 (1998), and the discretion afforded to the Court to grant additional time for a party to plead or otherwise respond, 10A Wright, Miller & Kane, <u>Federal Practice and Procedure Civil 3d</u> § 2685 (1998), combine to mandate that the Plaintiffs' motion for entry of default be, and is hereby **DENIED**.

CIVIL NO. 97-2251 (JP)          17

### 5.    Preclusion and Qualified Immunity

Defendants have also moved to dismiss on the basis of preclusion and qualified immunity.  The Court hereby **ORDERS** all parties to submit <u>new briefs</u> regarding the issues of preclusion and qualified immunity as they relate to the remaining claims.  The Court informs the parties that motions indicating that they are re-alleging the claims made in the briefs filed almost three (3) years ago before Judge Pérez-Giménez <u>will not</u> be accepted.

Regarding the immunity claims, the Court would like to point out that there are different claims and standards for each of the many Defendants, and therefore, urges Defendants to carefully  pinpoint each of the claims against them and to either <u>file separate briefs for each Defendant</u>, or to submit <u>one brief that clearly delineates each Defendant's argument</u>.

### V.    CONCLUSION

To recap, Defendants' motions to dismiss are hereby **GRANTED IN PART, DENIED IN PART**.  Defendant's claim that the Court abstain is **DENIED**.  Plaintiffs' motion regarding entry of default is **DENIED**.  Plaintiffs' opposition to defendants' Motion to Dismiss is hereby **GRANTED IN PART, DENIED IN PART**.  Plaintiffs' equitable claim has been **DISMISSED WITHOUT PREJUDICE**.  Plaintiffs' claims against Secretary Carlos Padín Bibiloni and against Police Superintendent Pierre Vivoni have also been **DISMISSED WITHOUT PREJUDICE**.  The Court has also **ORDERED** the parties to submit briefs discussing preclusion and qualified immunity as they relate to the remaining claims on or

CIVIL NO. 97-2251 (JP)          18


before **October 1, 2001.**  Plaintiffs' constitutional claims are still

pending before the Court.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, on this 20th day of July, 2001.

JAIME PIERAS, JR.
U.S. SENIOR DISTRICT JUDGE