IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

SURIMA SUAREZ CESTERO, et al.,   *
                                  *
     Plaintiffs,                  *
                                  *
v.                                *      CIVIL NO. 97-2251 (JP)
                                  *
DANIEL PAGAN ROSA, et al.,        *
                                  *
     Defendants                   *
                                  *

**OPINION AND ORDER**

I.   **INTRODUCTION**

The Court currently has before it a "Motion Requesting Reconsideration of Initial Scheduling Conference Order", filed by co-Defendant Ferdín Carrasquillo, in his personal capacity [1] (**docket No. 164**), as well as a "Motion Requesting Reconsideration", filed by the remaining co-Defendants, including co-defendant Carrasquillo, in their personal capacity (**docket No. 165**)[2]. Co-Defendant Carrasquillo requests the Court accept new undisputed facts, despite their tardiness. The remaining Defendants allege that the fine imposed on them at the Initial Scheduling Conference for non-compliance with the Initial Scheduling Conference Call was excessive as well as unwarranted because counsel had no notice of the requirements of the Call, and also submit new uncontested facts for consideration. For the reasons stated herein, both Defendants' Motions are hereby **GRANTED IN PART AND DENIED IN PART,** and Defendants represented by the



---

[1] Represented by attorney Miguel Pagán.

[2] Represented by attorney Carlos del Valle Cruz from the Department of Justice.

CIVIL NO. 97-2251 (JP)                      2

Department of Justice are hereby **ORDERED** to submit a check payable to the Clerk of Court in the amount of $500.00.

## II. FACTUAL BACKGROUND

In the spirit of searching for the truth, all attorneys practicing before this Court are expected to be well versed in pretrial practice. They are encouraged to read <u>Judicial Economy and Efficiency Through the Initial Scheduling Conference: The Method</u>, 35 Cath. U. L. Rev. 943 (1986) authored by the undersigned Judge, and peruse the Civil Justice Reform Act, codified at 28 U.S.C.A. §§ 471-482 (West 2001), in order to understand the necessity of adhering to orders concerning pretrial discovery. The federal docket is replete with costly time consuming litigation. The importance of this Court's Initial Scheduling Conference (hereinafter "ISC") and its resulting Order is to streamline this litigation and reduce the cost and delay that so frequently characterizes it. <u>See</u> <u>Comments of Senator Joseph Biden to the Civil Justice Reform Act</u>, S. 2027, 136 Cong. Rec. §407-04 *S414, and <u>Report of the Advisory Group of the Civil Justice Reform Act of 1990,</u> which was co-authored by the undersigned Judge, and to which the undersigned Judge also served as Judicial Chairman. The Civil Justice Reform Act is the basis of this Court's Initial Scheduling Conference. <u>See</u> <u>generally</u> <u>Civil Justice Reform Act</u>, 28 U.S.C.A. §§ 471-482 (West 2001); <u>Comments of Senator Joseph Biden,</u> *supra,* and the <u>Report of the Advisory Group of the Civil Justice Reform Act of 1990</u>, *supra*, Sec. VI.2.

The Initial Scheduling Conference method revolves around holding a conference where the parties and the undersigned meet in chambers

CIVIL NO. 97-2251 (JP)                3

promptly after the pleadings are filed and the parties answer the Complaint. Id. The undersigned has been utilizing this method for over 15 years, with exceptional results.

Prior to the meeting, an Initial Scheduling Conference Call is issued to all parties. By this Call, all parties and the Court are brought together for the first time to have the attorneys appraise each other and their clients of the merits of their case, and at this conference, the Judge sets the tone of the relationship between him and the attorneys in the case. See Comments of Senator Joseph Biden, supra. The parties must then set forth their facts, theory of the case, and supporting case law in an ISC Memorandum to be submitted to the Court and to the other parties 5 working days (or seven natural days) prior to the conference, and by so doing, are forced to confront gaps in their respective cases.

In order for the ISC to succeed, the parties must come to the conference with knowledge of the facts surrounding the pleadings and their consequences, including an assessment of damages. As a consequence, the Call requires the parties to come prepared to be able to enter into agreements as to uncontroverted facts and principles of law that are applicable to their case, as well as to discuss the possibility of settlement. Report of the Advisory Group supra, Sec. VI.2. During the conference all parties become familiar with the allegations of the other parties, stipulate as many facts as possible, and identify which facts and legal issues remain in controversy, so as to streamline the case. After the conference, the Court prepares the ISC Order, which sets forth the agreements the

CIVIL NO. 97-2251 (JP)                    4

parties came to during the conference and provides a time-line of the case from the conference until trial. Id.

On April 19, 2001, the ISC Call was sent to all parties in this case. The same ordered the parties to make the initial disclosures to each other pursuant to the amendments made to Fed. R. Civ. P. 26. In addition, it asked them to submit an ISC memorandum to the Court five (5) working days (or seven natural days) before the conference and asked them to include: their fact and expert witnesses and a summary of their proposed testimony; a list of uncontroverted facts; a list of their documentary evidence, and an itemization of discovery. The Call also advised all parties that dates for depositions, for announcing new witnesses, for announcing new evidence, for filing dispositive motions, for the pretrial and for the trial would be scheduled at the conference.

Since the purpose of the ISC is to streamline the case, the parties are warned, in the very first page of the Call, that non-compliance with the Call will result in sanctions. See Initial Scheduling Conference Call, at 1. Likewise, since the Court must analyze their memoranda, it requires the parties to file their memos at least five working days (seven natural days) before the conference, and states that failure to file the ISC memorandum by the due date will result in a sanction of $200.00 for each day the memorandum is late. Id. at 8-9.

Pursuant to this, an Initial Scheduling Conference was held in the case at bar on September 6, 2001. The parties were represented by counsel: José García Pérez, Esq., representing all Plaintiffs;

CIVIL NO. 97-2251 (JP)                 5

Laura González Lugo, Esq., representing Plaintiff Surima Suárez Cestero; Salvador Antonetti Stutts, Esq., representing all Defendants in their personal capacity and Francisco San Miguel Fuxench, Esq., representing co-Defendant Ferdín Carrasquillo, in his official capacity. The lead attorneys for defendants, attorney Carlos del Valle Cruz, and attorney Miguel Pagán, did not personally attend the conference due to other commitments; instead, they sent other attorneys as representatives for Defendants to the conference.

The ISC began, and after the parties had each set forth their version of the facts, the Court went on to determine uncontroverted facts. However, neither of Defendants' attorneys had included a section containing uncontroverted facts into their memos, making it very difficult for the parties to come to an agreement, and thereby incurring in their first violation of the ISC Call. Pursuant to its explicit indications in its ISC Call, the Court went on to fine defendants attorneys $500.00 each, $100.00 for each day that the ISC memorandum should have been filed (actually, an amount less than the stipulated $200.00 per day). See Veranda Beach Club Ltd. Partnership v. Western Sur. Co., 936 F.2d 1364 (1st Cir. 1991) (indicating that proper performance of case management function requires that trial court be allowed great latitude in applying the rule which permits imposition of sanctions upon parties who fail to comply with, or who endeavor to subvert, pretrial orders) and Rambus, Inc. v. Infineon Technologies AG, 145 F. Supp.2d 721 (E. D. Va. 2001) (indicating that, as a general matter, a trial court has wide latitude in

CIVIL NO. 97-2251 (JP)                6

imposing sanctions on parties who fail to comply with pretrial orders and procedural rules).

Since the only party that had included stipulated facts in their memo were Plaintiffs, the Court and the parties proceeded to discuss them. At this point, Defendants' attorneys conceded that they were unsure as to the veracity of some of the uncontested facts being proposed by Plaintiffs. In other words, they were not in a position to agree with or deny the facts, since they were unfamiliar with the case, thus incurring in their second violation of the Court's ISC Call. Consequently, the Court granted them ten (10) days to oppose the facts they were unsure about, specifically, Nos. 6, 7, and 11. Regarding facts Nos. 4, 8, 9, 11, and 12, the parties present at the conference explicitly agreed to the language stated therein.

The parties went on to set the dates and times for depositions, the deadline for dispositive motions, the deadline for announcing new witnesses and documentary evidence, and set dates for the pretrial and the trial. With this factual background in mind, the Court now turns to the motions filed by Defendants' counsel.

### III. ANALYSIS

a. Attorney Miguel Pagán

Attorney Miguel Pagán states in his motion that "the herein appearing party" never agreed to a number of facts as stated in his Motion. See Motion Requesting Reconsideration of Initial Scheduling Conference Order, No. 1 at 1. He then proceeds to submit certain additional facts as new uncontested facts, and asks this Court to accept them. The Court is at a loss to understand this statement.

CIVIL NO. 97-2251 (JP)                    7

First, attorney Pagán was not present at the conference. Second, attorney San Miguel, who attended as attorney for Mayor Carrasquillo, who Attorney Pagán also represents, did in fact agree to those facts, exactly as they are stated in the ISC Order, except for Nos. 6, 7, and 11, which the Court granted all defendants 10 days to oppose and explain. Therefore, the Court will not allow attorney Pagán to now 'change his mind' regarding facts which attorney San Miguel agreed to. Therefore, said request is **DENIED**. Regarding uncontested fact No. 6, the Court notes that attorney Pagán accepts the fact that, pursuant to the Judgment rendered by the Supreme Court of Puerto Rico, the permit issued by the DRNA required a public liability policy in the amount of $1,000,000.00 and a performance bond in the amount of $879,000.00, and denies the remaining parts thereof. Regarding uncontested facts Nos. 7 and 11, the Court hereby notes attorney Pagán's denial of the same.

Additionally, attorney Pagán submits to the Court uncontested facts of his own, and asks that the same be admitted. See <u>Motion Requesting Reconsideration of Initial Scheduling Conference Order</u>, at 1-8. However, counsel was ordered to submit these in its ISC Memorandum so all parties could confer about them and discuss the same. Although the Court chastises attorney Pagán for this, in the spirit of the Civil Justice Reform Act to avoid costs and delays, it will nevertheless accept the same. Therefore, this request is **GRANTED**. Since attorney del Valle from the Department of Justice has uncontested facts of his own to submit for consideration, the Court

CIVIL NO. 97-2251 (JP)                    8

will address both sets of additional uncontested facts in Section (c), <u>Factual Matters</u>, *infra*.

Attorney Pagán then proceeds to list his efforts in this case, indicating that he has diligently litigated the case filed in the Commonwealth Court in representation of co-Defendant Carrasquillo. *See* <u>Motion Requesting Reconsideration of Initial Scheduling Conference Order</u>, at 4-5. In addition, he states that he has been, throughout the course of this litigation, the first to file everything requested by this Court, including, a fifty-page brief regarding preclusion and qualified immunity,[3] a summary of the Commonwealth proceedings with the corresponding photocopies, and the ISC Memorandum. <u>Id</u>. He further states that he is not requesting that the Court withdraw the sanction, but complains about the fact that as a reward for his due diligence, the Court imposed on him a $500.00 fine. <u>Id</u>. The Court would like to make clear that, if attorney Pagán had carefully read the first page of the ISC Call, as stated therein, he would have realized it was necessary to submit uncontested facts and that his failure to comply with said order would result in sanctions. Therefore, regardless of his diligence, the Court was entirely justified in imposing said sanction.

Counsel Pagán concludes his motion by attacking the impartiality of the undersigned's Law Clerk on the basis of a comment that he was not even a witness to. *See* <u>Motion Requesting Reconsideration of</u>

---

[3] Which, the Court notes, is comprised for the most part of lengthy citations from cases with very little actual analysis or application of law.

CIVIL NO. 97-2251 (JP)                    9

Initial Scheduling Conference Order, at 8-9.  He asserts that he is concerned as to the involvement of said Law Clerk in this case given the fact that at one time she was a Law Clerk for Plaintiffs.  The parties were admonished before the undersigned hired this Law Clerk that she had provided law clerk research services for Plaintiffs and for two other law firms that shared office space, but that she did not practice as an attorney in any of these three firms, since she was not licensed to practice law in the Commonwealth of Puerto Rico.  They were also informed that she submitted a Sworn Statement declaring that she had no knowledge of this case, since she provided her research services to these firms based on specific assignments that she accepted at her discretion, that she never did any work for the Bennazar Law Firm on this particular case, and that she was never an employee of the Bennazar Law Firm.  In fact, she never even knew of the existence of this case, or that the Bennazar Law Firm represented Plaintiffs, until she had advised the undersigned of her availability for this Law Clerk position.

As the parties are well aware of, they were given the opportunity to examine her Sworn Statement, to examine her curriculum vitae and to object to this appointment before, and the Court received no objections.  Since no objection was made regarding this situation before, the Court cannot understand why this matter is being brought up at this moment.  The Court finds counsel's concern is unfounded.  Furthermore, the Court finds that the objection raised is a retaliation against the Court for the sanction imposed, which has no place in the relation of lawyers with the Court, particularly

CIVIL NO. 97-2251 (JP)                   10

when the sanction imposed was of the making of attorney Pagán himself, and is a sanction imposed to all lawyers in similar circumstances who do not comply with the Court's orders.

   b.   Attorney Carlos del Valle Cruz

Attorney del Valle's Motion goes further than attorney Pagán's, in that he requests the Court withdraw the $500.00 sanction imposed. Attorney del Valle states in his memorandum, via case law, that it is unfair to impose "unwritten" and not "expressly spelled out" sanctions without notice. See Motion Requesting Reconsideration, at 5. Notwithstanding counsel's well-pleaded argument, the Court finds it to be in error, by virtue of the simple fact that the rule was not unwritten; it was plainly stated in the very first page of the ISC Call that was sent out.

> "The Court urges the parties to read the orders contained in this Call carefully. Failure to comply will result in stiff penalties, including but not limited to the entry of default, the dismissal of one or more claims or defenses, barring of witnesses or evidence, or monetary sanctions. See Fed. R. Civ. P. 16(f)."

Initial Scheduling Conference Call, Par. 1, at 1. (Docket No. 104); See also Fed. R. Civ. P. 16(f).

In addition, the ISC Call clearly states that Uncontested Facts must be supplied in the memorandum to be submitted by the parties. See Initial Scheduling Conference Call, at 8. Therefore, Counsel del Valle cannot argue that he had no notice of the possibility of sanctions since the 'unwritten' rule was, in fact, very plainly written. Therefore, his request that the Court levy the $500.00 sanction imposed is **DENIED**.

CIVIL NO. 97-2251 (JP)          11

Regarding the Uncontested Facts, attorney del Valle submits that the uncontested facts he set forth in his memorandum complied with the ISC Call issued by this Court.  <u>See Motion Requesting Reconsideration</u>, at 3-4.  However, the purpose of agreeing on uncontested facts is to weed out unnecessary facts so as to narrow the scope of the issues to be tried.  In other words, so the parties may come to an agreement as to what is uncontested and need not be addressed, and what are the disputed facts and issues remaining in the case so as to focus their energies, time and monies on said issues.  Therefore, attorney del Valle's suggestion, setting forth "all underlying submissions, official documents and docket entries"[4] in both the DNRE administrative proceeding and in the Commonwealth case [5] as uncontested facts simply make it impossible to consider all underlying submissions, official documents and docket entries in all 4 proceedings due to the sheer size of said proceedings, which, the Court adds, have been going on since 1997, and have therefore generated an overwhelming amount of paper.

However, as far as the Court understands attorney del Valle's argument, he has 2 uncontested facts to propose:

    1.    That the Supreme Court of Puerto Rico found that the DNRE had issued an unlawful permit to Plaintiffs.

---

[4]   <u>See</u> <u>Motion Requesting Reconsideration</u>, at 3.

[5]  Furthermore, attorney del Valle submits as uncontested facts issues from all three Commonwealth courts this case passed through: the Court of First Instance, the Court of Appeals and the Supreme Court.

CIVIL NO. 97-2251 (JP)            12

    2.   There is no pending permit before the DNRE.

See <u>Motion Requesting Reconsideration</u>, at 4.

    Again, the Court notes that this is not the time to submit uncontested facts, but will nevertheless, as in the case of attorney Pagán, accept the proposed uncontested facts, and therefore **GRANTS** this request to consider them submitted. Plaintiffs in turn will have an opportunity to agree or disagree with the same, and explain its answer in case of disagreement.

    The Court now addresses attorney del Valle's final concern regarding an inquiry that was made by the undersigned and his allegation that said inquiry reflects an "impermissible relationship with respect to counsel's civil rights advocacy before this Honorable Judge, given the rather significant monetary sanction. . .". See <u>Motion Requesting Reconsideration</u>, at 5-6. With said inquiry, the Judge merely wished to ascertain the identity of the attorney--who by the way, has never appeared in person in this case--and to determine whether counsel del Valle was, in fact, the same attorney that had appeared before him in a previous case. The inquiry made by the undersigned does not reflect an 'impermissible relationship', and the sanction was certainly not imposed because of any views the undersigned may or may not have regarding counsel del Valle, or any other attorney, but for the clear reasons stated herein. See <u>Liteky v. United States</u>, 510 U.S. 540, 555, 114 S. Ct. 1147, 127 L.Ed.2d 474 (1994) (holding that judicial remarks that are critical or disapproving of, or even hostile to, counsel, the parties or their case, ordinarily do not support bias or partiality challenge unless

CIVIL NO. 97-2251 (JP) 13

they reveal such a high degree of favoritism or antagonism as to make fair judgment impossible). As a matter of fact, this Court has followed attorney del Valle's advice and opinion in other cases and has entered judgment in favor of his client on more than one occasion, thus showing no animus or prejudice.

As a matter of fact, as stated before, these sanctions are generally imposed on attorneys under similar circumstances. The sanction imposed on attorney del Valle was imposed merely because, as was the case with attorney Pagán, attorney del Valle simply did not comply the instructions contained in the Court's ISC Call. Therefore, the sanction, again, like in the case of attorney Pagán, was entirely justified. Both attorneys have now effectively further delayed this process, which has been at a standstill for so long. As in counsel Pagán's case, the Court finds counsel del Valle's concern unfounded.

    c. <u>Factual Matters</u>

        1. <u>Uncontested Facts</u>

The Uncontested Facts in this case stand as follow. The Court will not allow any amendment to the same, since they were agreed upon by all counsel, including representatives for Defendants:

1. Daniel Pagán was the Secretary of the DRNA from January 1997 to January 2001.
2. Ferdín Carrasquillo was the Mayor of Loíza during the time of the events alleged in the Verified Complaint and continues in that capacity. Pedro Toledo was the

Superintendent of Police from January, 1993 to January, 2001.

3. Carmelo Correa was the Carolina Area Police Commander in May, 1997 and thereafter.

4. The members of the Estates are the owners in fee simple of a parcel of land in the Medianía Baja Ward of the Municipality of Loíza approximately 900 meters inland from the coast, 2.5 Km. East of the Río Grande de Loíza and 2.3 Km. West of the Río Herrera ("the Property"). The only entrance to the Property is located at Km. 8.4 of Puerto Rico State Road no. 187 (PR-187).

5. The parties stipulate to the contents and authenticity of the Judgment Rendered by the Carolina Superior Court.

6. The permit issued by the DRNA required a public liability policy in the amount of One Million Dollars and a performance bond in the amount of $879,000.00.

7. The parties stipulate that hearings regarding the permanent injunction took place before the Carolina Superior Court, and further stipulate to the contents and authenticity of the report submitted by Secretary Pagán to the Carolina Superior Court.

8. The parties stipulate to the content and authenticity of the letter that was sent to Superintendent Toledo after the Carolina Court rendered its Judgment denying the Permanent Injunction.

CIVIL NO. 97-2251 (JP) 15

9.  On July 29, 1997, at the expiration of the Preliminary Injunction, by telephone, the Carolina Superior Court notified the parties that it had denied the Permanent Injunction requested by the Municipality and had dismissed the Complaint, announcing its decision would be issued in writing within ten days.

10. On August 11, 1997, no sand extraction activities took place.

   2.  <u>Additional Uncontested Facts</u>

The following Additional Uncontested Facts are being added to the original list. **NO** additional submissions of uncontested facts will be accepted. The parties are hereby **ORDERED** to attend a special hearing in chambers on **November 26, 2001, at 4:00 p.m.** Specifically, the Court would like to make sure that attorney Miguel Pagán, and the attorney substituting for attorney Carlos del Valle Cruz, attorney Carlos Morales from the firm Rosselló-Rentas & Rabell-Méndez, to make sure they personally attend said meeting to discuss these newly submitted uncontested facts and to come to an agreement regarding the same.

1.  The Supreme Court of Puerto Rico found that the DNRE had issued an unlawful permit to Plaintiffs.

2.  There is no pending permit before the DNRE.

3.  The parties stipulate to the content and authenticity of the Judgment rendered by the Puerto Rico Supreme Court.

CIVIL NO. 97-2251 (JP)                16

4. Several hearings were held for both the Temporary Restraining Order and the Permanent Injunction, including an on-site inspection.

5. The Commonwealth case was finally decided by the Supreme Court of Puerto Rico, where it revoked the decision made by the lower court.

6. On April 22, 1997, the Municipality of Loíza filed a petition for Injunction before the Commonwealth of Puerto Rico Superior Court of Carolina, Puerto Rico, against (sic) herein Plaintiffs, where it alleged that the permits obtained by them before the local agencies for a housing development where (sic) a subterfuge or disguise for the sand extraction activities.

7. After an initial hearing, the lower court issued an Order on May 12, 1997, (sic) issued a temporary restraining order ordering (sic) herein Plaintiffs to hault (sic) sand extraction activities for ten days.

8. The Court held an on-site inspection and several hearings where it then issued an order granting the preliminary injunction.

9. In the May 30, 1997 Carolina Superior Court Order, said Court held that the Municipality of Loíza had suffered the consequences of sand extraction over the years.

10. The Constitution of the Commonwealth of Puerto Rico establishes a mandate for the protection of Puerto Rico's natural resources and the conservation of our environment.

11. The sand extraction activities conducted by the herein Plaintiffs at the Property, are not incidental to the proposed housing development.

12. The sand extraction activities would create a lake of approximately 18 "cuerdas", occupying about one-third of the Property.

13. Plaintiffs did not conduct an adequate environmental assessment to address the environmental impact of the sand extraction activities.

14. The sand extraction activities had a significant environmental impact and an environmental impact statement (EIS) was necessary in order to comply with the requirements of Article 4(c) of Public Law No. 9, June 1, 1970 (as amended).

15. Plaintiffs do not have a duly (sic) Commonwealth permit that allows sand the extraction activities as proposed by them at the Property.

16. The permits obtained for the housing development can not (sic) be used as a basis for the proposed sand extraction activities by the Plaintiffs.

17. The Commonwealth of Puerto Rico Supreme Court determined that Plaintiffs (sic) proposed sand extraction activities at the Property would cause an (sic) irreparable harm.

CIVIL NO. 97-2251 (JP)                18

## IV. CONCLUSION

For the aforementioned reasons, both Defendants' Motions are **GRANTED IN PART AND DENIED IN PART**. Attorney Pagan's request to alter agreed upon facts is **DENIED**. Attorney del Valle's request for the Court to withdraw the $500.00 dollar sanction imposed is **DENIED**, and the Motion for Reconsideration filed by him is hereby **DENIED**. Defendants have set forth new uncontested facts and have requested they be considered, and this request is **GRANTED**. The parties have also been **ORDERED** to attend a special hearing in chambers on **November 26, 2001, at 4:00 p.m.**, to discuss the same.

**IT IS SO ORDERED AND ADJUDGED.**

In San Juan, Puerto Rico, this 13th day of November, 2001.

JAIME PIERAS, JR.
U. S. SENIOR DISTRICT JUDGE