IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

RECEIVED AND FILED

SURIMA SUAREZ CESTERO, et al.,          *        2002 MAR 11  AM 8: 57

        Plaintiffs,                     *
                                        *        CLERK'S OFFICE ... PX
v.                                      *        CIVIL NO. 97-2251 (JP)
                                        *
DANIEL PAGAN ROSA, et al.,              *

        Defendants.                     *

_____       *


## OPINION AND ORDER

### I.    INTRODUCTION

Pursuant to this Court's Opinion and Order of July 20, 2001, requesting briefs regarding the issues of preclusion and qualified immunity (docket No. 143), the Court has received briefs and replies from Plaintiffs (**docket No. 170** and 197), co-Defendants Secretary Daniel Pagán Rosa, Police Superintendent Pedro Toledo Dávila, Commander Carmelo Correa, and Mayor Ferdín Carrasquillo, all in their personal capacity (**docket No. 181**), and Mayor Ferdín Carrasquillo in his official capacity (**docket No. 161,** 174 and 198). In the instant Opinion and Order the Court considers the merits of the aforementioned briefs.

The Court has before it two unresolved issues, which are both dispositive as to whether the Court can proceed with this case. The first is whether a state court decision in a related case, involving some of the parties to this cause of action, prevents this Court from exercising jurisdiction in this case. The second issue is whether the co-Defendants in this case, Superintendent Pedro Toledo Dávila, Colonel Carmelo Correa, and Secretary Daniel Pagán Rosa, in their



CIVIL NO. 97-2251 (JP)                2

personal capacities, and Mayor Ferdín Carrasquillo, in his personal and official capacity, are immune from suit under the doctrine of qualified immunity. If either of these questions is answered affirmatively, the case will be dismissed. In the alternative that both questions are answered negatively, then the case shall proceed unhindered by these considerations.

For the reasons set forth below, the Court holds that Plaintiffs' claims are not precluded by the Commonwealth court's decision, and also holds that the co-Defendants cannot avail themselves of the defense of qualified immunity at this stage of the litigation.

## II.  PROCEDURAL BACKGROUND

Although this Court has already discussed in depth the background of this case in its Opinion and Order of July 20, 2001, the Court believes it necessary to further delve into the particulars of the claim filed in the Commonwealth court.

The factual background shows that Plaintiffs in this action are the heirs of Marcial Suárez and Encarnación Fuentes, as well as the Estate of Marcial Suárez and the Estate of Encarnación Fuentes (collectively hereinafter "the Estates"). The Estates are the owners of a parcel of land located in the Medianía Baja Ward of the Municipality of Loíza (hereinafter "the property"). Attorney Surima Suárez (hereinafter "attorney Suárez"), a member of both Estates, has a contract with the Estates for the removal of sand from the property. Plaintiffs allege that the sand removal was the first

CIVIL NO. 97-2251 (JP)            3

phase of a residential project that was being developed by the Estates called "Lago del Palmar", which would consist of several residential housing buildings surrounding a large lake.

To that end, Plaintiffs identified and advertised the project, and allegedly obtained all the permits necessary from all the relevant government agencies for its completion. Plaintiffs also obtained an additional governmental permit to extract sand, took out insurance in the amount of One Million Dollars ($1,000,000.00), and posted a performance bond in the amount of Eight Hundred Seventy-Nine Thousand Dollars ($879,000.00). Plaintiffs commenced with the sand removal phase of the project in January 1997.

On April 29, 1997, the Municipality of Loíza, through its Mayor Ferdín Carrasquillo Ayala, filed a civil action in the Commonwealth of Puerto Rico Court of First Instance, Carolina Part, Civil No. FPE97-0332(401) (hereinafter the "Commonwealth court", or the "Commonwealth case") to enjoin Plaintiffs from further sand removal. The Municipality alleged that the Lago del Palmar project was a false front for sand removal and that attorney Suárez never intended to complete the same. The Municipality also claimed that the sand removal project was operating illegally because Plaintiffs had not obtained all the necessary permits, and further alleged irreparable harm to the flora, fauna and ecosystem of the area. The Municipality sought a temporary restraining order ("TRO"), as well as a preliminary and permanent injunction to enjoin Plaintiffs from further sand removal from the property.

CIVIL NO. 97-2251 (JP)               4

On May 8, 1997, attorney Suárez was served with process in said case. The documents served also stated that the Commonwealth court had set a hearing regarding the Municipality's TRO request for May 12, 1997. On that same day and thereafter, specifically on May 9, and 12, 1997, picketing took place at the entrance of Plaintiffs' property. Trucks and machinery owned by the Municipality of Loíza were parked at the entrance to the property, where they allegedly blocked the entrance and departure of trucks and of people working on the project and prevented any further sand removal. Mayor Carrasquillo and co-Defendant Colonel Correa, the Puerto Rico Police Commander for that area, were present.

The Estates answered the Complaint on the same day they were served, May 8, 1997, and at that same time filed a counterclaim against the Municipality of Loíza, alleging the picketing the Mayor had organized and sponsored on the property was illegal, seeking a temporary restraining order, and a preliminary and permanent injunction to enjoin the Mayor from carrying out and participating in any further illegal acts. The Estates also prayed for a hearing to assess damages allegedly suffered by the Estates as a result of said actions. Attorney Suárez claimed she and others who were inside the property were illegally detained (the phrase used in their Answer was "held hostage") at the property for a number of hours that day, because Mayor Carrasquillo's men did not let anyone in or out of the project.

CIVIL NO. 97-2251 (JP)          5

In addition, on that same day co-Defendant Daniel Pagán, Secretary of the Department of Natural Resources and the Environment (hereinafter "DNRE"), allegedly contacted attorney Suárez and asked her to voluntarily stop the activities she was carrying out at the project. Attorney Suárez refused, stating she had valid permits issued pursuant to law to carry out the sand removal activities.

On May 9, 1997, the Police were allegedly detouring trucks arriving at the property to carry out the sand, and were instructing them to leave the area. Plaintiffs allege that the Police told attorney Suárez that they were acting pursuant to orders. Shortly thereafter, Mayor Carrasquillo arrived at the scene and once again mobilized the townspeople and blocked the entrance and exit to the property. Plaintiffs allege that less trucks arrived at the project that day because the police were ordered to divert them at the intersection of PR-3 and PR-187, the road that led to the project.

That same day, May 9, 1997, Plaintiffs wrote and delivered a letter to co-Defendant Toledo, the Police Superintendent, regarding the problem, specifically pointing out the dangerous atmosphere that prevailed in and around the project, and asking the Superintendent for help in protecting the rights of those at the project. Said letter went unanswered and was to no avail; the picketing continued that day and on May 12, 1997, and the project remained paralyzed.

The Commonwealth court held a hearing on May 12, 1997. During said hearing, Secretary Pagán apparently requested a meeting in chambers, where he allegedly informed that court that he could try

CIVIL NO. 97-2251 (JP)              6

to resolve the explosive situation.   The Commonwealth Court then issued a ten (10) day temporary restraining order to see if the situation could be resolved amicably.   At the end of the first ten (10) days, no change had occurred, and therefore that Court extended the order by an additional ten (10) days.   After no further change in the situation was reported, the Commonwealth court then issued a preliminary injunction that enjoined further sand removal for sixty (60) days.   It further ordered an environmental evaluation to be carried out to determine ecological and other damages, and held a hearing to consider these issues.

On July 2, 1997, the Estates filed a Third-Party Complaint against the DNRE, alleging that the Secretary of said administrative agency had intervened and acted improperly in the case, had prevented the Police Department from carrying out their duties, and had thus aided and abetted the illegal actions carried out against the Estates.

In August 1997, after a lengthy hearing on the merits, the Commonwealth court concluded that no irreparable harm had been proven by the Municipality of Loíza, and that its claim for damages to the environment was not supported by any scientific or specific evidence. Consequently, it denied the motion for injunctive relief and dismissed the Municipality's complaint.   The Municipality appealed, and the Court of Appeals affirmed the Judgment issued by the trial court.   The Municipality then appealed the ruling to the Supreme Court of Puerto Rico, who on December 16, 1999, granted *certiorari*.

CIVIL NO. 97-2251 (JP)              7

At the administrative level, concurrent procedures regarding the sand removal controversy commenced in March 1997, when the DNRE, at the behest of the Municipality and its citizens, ordered hearings be held regarding the sand removal. During said hearings, various people, including attorney Suárez, testified. The hearing examiners then issued a report concluding that the sand removal activities represented a grave threat to public safety and recommended that sand removal be halted until integrated and rigorous technical studies were completed. The examiners further recommended that Suárez's permits be revoked.

On June 6, 1997, allegedly as part of an administrative procedure, and after the Commonwealth court had granted the preliminary injunction (that is to say, during the sixty-day period the sand removal was halted), Secretary Daniel Pagán issued a "Cease and Desist Order" against attorney Suárez enjoining her from further sand removal. Said Order additionally required her to show cause as to why her permits should not be modified and/or revoked. Attorney Suárez so complied.

After the Commonwealth court found no irreparable harm and dismissed the complaint against attorney Suárez, (i.e. August, 1997) she informed the DNRE that the sand removal would be resuming, since the Cease and Desist Order had no legal validity because the Municipality's case had been dismissed. On August 8, 1997, Secretary Pagán's attorney notified Suárez that the administrative proceedings against her were ongoing and that any request or petition should be

CIVIL NO. 97-2251 (JP)               8

presented by motion in the administrative case.  Secretary Pagán claimed that, after a recent on-site inspection, a water pump was detected in violation of the permits and that consequently, her permits should be revoked.  In essence, he alleged Plaintiffs were required to obtain an additional permit for the water pump.  However, Plaintiffs contend that the water pump had always been in plain view at the site, since it was necessary in order to comply with a dust-abatement clause of the permits.  Plaintiffs further contend that said alleged violation was never detected or noticed before.

Attorney Suárez requested that the administrative case be dismissed, and Secretary Pagán refused, insisting that the DNRE proceeding was different and separate from the Commonwealth court proceeding.  When Secretary Pagán refused to vacate his Cease and Desist Order, Suárez and the Estates filed the Verified Complaint and Request for a Temporary Restraining Order, Preliminary and Permanent Injunction in the instant case on August 19, 1997, against Secretary Pagán, Police Chief Pedro Toledo, Police Colonel Carmelo Correa and the Mayor of Loíza, Ferdín Carrasquillo.  The administrative proceedings against the Estates continued until March 2001, when the DNRE voluntarily dismissed the case.

Returning to the Commonwealth case, and to the present, the Supreme Court of Puerto Rico issued a Judgment in the Commonwealth case on June 13, 2001.  It ordered the Estates to cease all sand removal operations while they obtained the necessary permits to lawfully carry out their operations.  <u>Municipio de Loíza v. Sucesión</u>

CIVIL NO. 97-2251 (JP)                9

Suárez, No. CIV. CC-1999-0833, 2001 WL 669629, at *16 (P.R., June 11, 2001). Specifically, the Supreme Court held that the Estates had not made the necessary environmental impact statement before beginning the sand removal as required by law, and therefore found their permits lacked validity. Id. Consequently, it granted the permanent injunction in favor of the Municipality of Loíza. Id. at 16-17.

The Court now turns to the case before it. As previously stated, in August 1997, the Estates, Plaintiffs in this action, brought this case under 42 U.S.C. § 1983 for alleged violations of their constitutional rights under the Due Process Clauses of the Fifth and Fourteenth Amendments, and under the Takings Clause of the Fifth Amendment of the Constitution of the United States. Pursuant to the Opinion and Order entered on July 20, 2001, this Court held that there was no parallel state proceeding and therefore abstention under Younger v. Harris was not warranted; that the current case was not moot since there were still constitutional issues pending before this Court; and that the res judicata defense was not applicable. This Court also dismissed Plaintiffs' equitable claim, the claims brought against current DNRE Secretary Carlos Padín Bibiloni and his wife, and against current Police Superintendent Pierre Vivoni and his wife.

Specifically, Plaintiffs in the case at bar aver that Defendants, individually, and at times in conjunction, forcibly detained attorney Suárez, and deprived her and the other Plaintiffs of their property interest in permits legally obtained in connection

CIVIL NO. 97-2251 (JP)            10

with the residential development Lago del Palmar, without due process of law. Plaintiffs also claim that Defendants deprived them of their constitutionally protected rights to liberty and freedom to contract, and that as a consequence of Defendants' illegal actions, they suffered damages in the amount of approximately sixty (60) million dollars.

This Court ordered the parties to submit briefs on the issues of preclusion and qualified immunity as it related to the remaining claims, and the parties so complied. Plaintiffs allege that the suit filed in the Commonwealth court does not have preclusive effect, since they were unable to bring forth the claims brought in this suit in the Commonwealth suit. They also allege that the doctrine of *res judicata* does not apply, since it requires perfect identity between the thing, the parties and the causes of action, and that those requirements are lacking in the case before this Court. They further aver that Defendants are not protected by qualified immunity, since Defendants knew their actions were illegal at the time of the events giving rise to this cause of action, and that they wilfully violated Plaintiffs' constitutional rights.

Defendants, on the other hand, allege that the suit filed in the Commonwealth court precludes this Court from exercising jurisdiction because Plaintiffs' cause of action in this case arises out of the same transaction or occurrence as the Commonwealth case, and contains the same parties, and is thus barred by the doctrine of *res judicata*. Defendants also allege that they are protected by the doctrine of

CIVIL NO. 97-2251 (JP)            11

qualified immunity, since all Defendants acted within the scope of their employment. The Court now considers the issues of Plaintiffs' rights, preclusion and qualified immunity.

**III. ANALYSIS**

    A. <u>Plaintiffs' rights</u>

    The Court finds that Plaintiffs have successfully asserted claims under the right to due process, the right to liberty (or to freedom from restraint), and the right to freely contract. Plaintiffs aver that they have a property right in the permits granted to them; in other words, that they had a legitimate claim of entitlement to the permits, which they allege was protected against deprivation without due process of law. They rely on <u>Suárez v. Gelabert</u>, 541 F. Supp. 1253 (D. Puerto Rico 1982) and its appellate counterpart, 701 F.2d 231 (1st Cir. 1983) for this proposition. The Court finds Plaintiffs' argument to be correct, but their reliance on this particular case to be misplaced.

    <u>Suárez v. Gelabert</u>, (hereinafter, "<u>Gelabert I and II</u>" to distinguish from the present case) as Plaintiffs correctly point out, stands for the proposition that the plaintiffs therein had a legitimate expectation in state conferred benefits from a permit granted by the government, and that they had a property right in said permit. <u>Gelabert I</u>, 541 F. Supp. at 1260. In <u>Gelabert I</u>, the plaintiffs sought and obtained a one year permit from the DNRE to extract sand from their property. <u>Id.</u> at 1255. The permit was revocable at any time, and was conditioned on the plaintiffs

CIVIL NO. 97-2251 (JP)              12

obtaining from the Planning Board an emission source permit before beginning their sand removal operations.  Id. at 1257.  However, after public hearings were held, an examining panel determined that there was a risk to the environment, and recommended that the emissions permit be denied.  Id.  Subsequent to that determination, the permit was denied.  Id.

The Court in Gelabert I held that the plaintiffs' reliance on said permit as valid was reasonable, that said reliance had conferred a limited interest in the permit and consequently, that the plaintiffs were entitled to "some procedural protection that would guarantee that plaintiffs receive a fair opportunity to protect their interest".  Id. at 1261.  The Court of Appeals upheld.  Gelabert II at 233.  However, the factor that makes the Gelabert cases distinguishable from this case is that in Gelabert I and II, the property interest emanated from a properly and legally granted permit, which is not the case here.  Consequently, said argument is unavailing to Plaintiffs' case.

Under Puerto Rico law, when an administrative body commits an error in the application of a law, the agency's actions are considered invalid, and they constitute a violation of the law regardless of whether or not the permit was approved by an agency or any of its officials.  See Rivera Concepción v. A.R.P.E., 2000 TSPR 143 (P. R. 2000); Del Rey v. Junta de Apelaciones, 107 P.R. Dec. 348 (P.R. 1978); E.L.A. v. Mercado Carrasquillo, 104 P.R. Dec. 784 (P.R. 1976); Mendoza Aldarondo v. Asociación de Empleados, 94 P. R. Dec.

CIVIL NO. 97-2251 (JP)              13

564 (P.R. 1967); <u>Infante v. Tribunal Examinador de Médicos</u>, 84 P.R. Dec. 308 (P. R. 1961).

Plaintiffs claim that they relied on the permits issued to them by the government and that consequently, the government cannot deprive them of the benefits of said permits. This is what is known as 'estoppel'. In Puerto Rico, it is well established that a party may not raise the theory of estoppel if an end that would contravene public policy would result. <u>Del Rey</u>, 107 P.R. Dec. at 355. Since the Judgment entered by the Puerto Rico Supreme Court dealt with violations of public policy, this Court looks at this issue under Puerto Rico law.

In <u>Del Rey</u>, the Supreme Court of Puerto Rico overturned the decision of the trial court, and declined to issue a use permit based on a document that allegedly exempted plaintiffs from obtaining a construction permit for ongoing construction at their motel, when in fact, it was necessary for them to have said permit. The Puerto Rico Supreme Court held that, "The application for the use permit presented in 1976 asks to uphold a *fait accompli* that was illegally and clandestinely obtained . . . in the event that the administrative agency had committed any error in the application of the law, that act would be invalid." <u>Id</u>. at 355. (Court translation).

However, this Court notes that the Puerto Rico Supreme Court has been redefining the application of "public interest" or "public policy" and has upheld an exception to the estoppel principle: that estoppel can be invoked against the government if an end that does

CIVIL NO. 97-2251 (JP)             14

not contravene public policy would result.  See Mendoza Aldarondo, 94 P. R. Dec. at 578; Infante, 84 P.R. Dec. at 316.  That is to say, if public policy would not be violated by the application of estoppel, then estoppel can be successfully raised against the government.

In Infante, the Supreme Court analyzed several of their own decisions in which erroneous administrative decisions were involved, and confirmed their holdings against an agency because that agency's actions, which consisted in granting a permit or approving something, had contravened public policy.  Infante involved a doctor that had studied at a non-accredited university in the United States, who therefore, under the existing law, could not apply for certification in Puerto Rico.  Nevertheless, by error of the agency, a certificate was granted, admitting him to sit for the required examinations.  The administration later revoked the certificate upon discovery of the error.  The Supreme Court upheld the revocation, and stated that the error,

> . . . should not and could not be considered as recognition of Kansas City University.  The Board could not by-pass the law to register a university with infirm qualifications . . . .  The admission of Doctor Infante to the board exams would be contrary to the dispositions of said law and the Board acted legally in denying him admission.

Id. at 314. (Court translation).

The Puerto Rico Supreme Court in Infante, citing to Vives v. Junta de Farmacia, 24 P.R. Dec. 669 (P.R. 1916), stated that the estoppel doctrine can, in fact, be applied in instances between two

CIVIL NO. 97-2251 (JP)              15

civilians. Infante at 315. However, in instances where one party is a civilian, and the second is the government, estoppel cannot be invoked if there is an important public interest at stake. Id. The Puerto Rico Supreme Court then upheld the revocation, citing to the importance of protecting public health by having only properly qualified doctors practicing. Id. at 314.

Mendoza Aldarondo stands for the proposition that administrative decisions must be carried out faithfully and correctly. In Mendoza, the Puerto Rico Supreme Court confirmed a Judgment that corrected an inadvertent administrative error that enabled the plaintiff to benefit from a better insurance plan, when in fact said plan had been specifically denied to him. The Puerto Rico Supreme Court mentioned the changing notion of public policy or public interest, and citing Infante, stated that, "if it has been held that in certain cases the government can be subject to the estoppel doctrine, we do not think that given these circumstances, said doctrine should be applied . . .". Id. at 579. (Court translation). The Supreme Court therefore upheld the trial court's decision and held that the Petitioner did not have a right to a better health plan, stating that compliance with regulations and administrative decisions was a matter of public order. Id. at 569.

Perhaps the clearest indication of this change was stated by the Puerto Rico Supreme Court in Morales v. Municipio de Toa Baja, 119 P. R. Dec. 682 (P.R. 1987). Said case involved the illegal misuse of public and municipal funds by its Mayor. In discussing the

CIVIL NO. 97-2251 (JP)                16

theories of unjust enrichment and estoppel, the Puerto Rico Supreme Court stated that there had been several instances in which those theories had been applied against the state.  Id. at 693-694.  In said instances, however, violations of public policy were not being effectuated and statutes dealing with public order were not involved.  Id. at 694.  Referring to their own case, the Puerto Rico Supreme Court went on to state that violations of the law, public policy and order were so gross that the application of the aforementioned equitable principles was simply impossible.  Id. at 694.

From said holding, this Court can conclude that estoppel can be applied against the government when public policy would not be violated.  With this standard in mind, the Court now looks at the issue of Plaintiffs' reliance on the governmental permit issued to them and whether public policy would be violated by permitting Plaintiffs to raise the theory of estoppel.

In each of the aforementioned cases, there was a clear violation of public policy.  In Del Rey, the public policy interest was the protection of an industrial zone from commercial buildings and the enforcement of zoning laws.  In Infante, the public policy interest was the protection of society from the practice of medicine by doctors with unsuitable credentials.  In Mendoza Aldarondo, the public policy end was suitable insurance coverage for individuals.  In Morales, the public policy interest was protection of public funds and the general welfare of the municipality.  In all of these cases, the end result was a matter of public policy.  In other words, it was

CIVIL NO. 97-2251 (JP)            17

not the permit itself, or the <u>process</u> that was the problematic issue;
rather it was the end result - the consequences of allowing that
particular person to do whatever he thought he could do in reliance
of the permit.

In the case at bar, the end result, the removal of sand from the
property, or more to the point, a hole in the earth, in and of itself
cannot be considered to be a violation of public policy. However,
this Court does not reach this decision on its own, but rather relies
upon the wisdom of its brethren of the Puerto Rico Supreme Court.
The opinion of the Puerto Rico Supreme Court clearly evidences this
point quite clearly, as they ordered the halting of the sand removal
<u>until the Estates obtain the necessary permits to do so</u>. <u>Sucesión
Suárez</u>, 2001 WL 669629 at 17. In essence, the problem was in the
permit, or the process, not in the end result, since the Supreme
Court stated that the digging itself did not cause irreparable harm -
rather, said harm was in the invalid permit itself. <u>Id</u>. at 16.
Furthermore, the Supreme Court went on to specifically state that the
Estates could continue with the removal after they obtained the
necessary permit. <u>Id</u>. at 17.

This Court notes that in the Puerto Rico cases above, there is
simply no way for the parties involved to successfully continue their
venture: the <u>Del Rey</u> plaintiffs cannot build a motel in a
residential area. The <u>Mendoza</u> party is simply ineligible for the
insurance he requested. The <u>Infante</u> doctor can never practice in
Puerto Rico with the degree he possesses. In <u>Morales</u>, municipal

CIVIL NO. 97-2251 (JP)                18

monies can never be utilized in contravention to municipal law.  In
all these cases, it is very difficult for the parties to obtain their
sought end-result without violating public policy.  There would have
to be changes in the zoning laws (unlikely, as all other businesses
in the area would have to move); a doctor would have to go back and
study medicine at an accredited medical school, (an unreasonable and
improbable solution); a person would have to suffer an accident in
hopes that better disability insurance will be afforded him; and
changes must be made to the municipal laws to allow for the different
uses of funds.  Indeed, that is the point of public policy concerns;
that they are so important and so fundamental, that they are
oftentimes difficult, if not impossible, to overcome.  See Greater
Newburyport Clamshell Alliance v. Public Serv. Co. of New Hampshire,
838 F.2d 13 (1st Cir. 1988) (stating that the benefit sought must be
"weighty enough" to overcome the public policy concerns).

     In the case at bar, Plaintiffs can continue their venture by
simply obtaining the necessary permit (or more to the point, by
performing the necessary Environmental Impact Statement).  Therefore,
it would be difficult indeed to argue that Plaintiffs' sand removal
violates public policy when the end result, the sand removal, is
negligible and when the interest of public policy can be so easily
maintained.  Consequently, having found that Plaintiff's digging in
the case at bar does not violate public policy, this Court holds that
Plaintiffs can invoke the theory of estoppel in this instance, and
that their reliance on their permit was presumed to be valid until

CIVIL NO. 97-2251 (JP)          19

it was declared insufficient by the Supreme Court of Puerto Rico on
June 11, 2001.  Therefore, Plaintiffs had property interest in said
permits, and were entitled to due process before being deprived of
them.

    B.    Preclusion

       1.    Res Judicata

    The doctrine of *res judicata* – meaning, literally, that the
thing has been decided – binds parties from litigating or re-
litigating any issue or claim that was adjudicated in a prior case.
*Res judicata* issues arise because of the commonly accepted practice
in both federal and state judicial courts of concurrent jurisdiction;
that is, when similar claims based on a similar set of facts and
involving the same parties are allowed to proceed simultaneously in
different judicial forums.  See Colorado River Water Conservation
Dist. v. U.S., 424 U.S. 800, 96 S. Ct. 1236, 47 L.Ed.2d, 483 (1976).
When jurisdiction is proper in the federal district court, it is only
in exceptional circumstances that the court can abstain or dismiss
the action in deference to an identical or similar state court
proceeding.  Id. at 1244. Dismissal by the court of cases properly
before it is justified only in those situations where an "important
countervailing interest" would be served.  County of Allegheny v.
Frank Mashuda Co., 360 U.S. 185, 79 S. Ct. 1060, 3 L.Ed.2d 1163
(1959).

    Under *res judicata*, when identical causes of action are filed,
the first judgment entered generally bars adjudication of claims in

CIVIL NO. 97-2251 (JP)           20

the second action without regard to the order in which the actions were filed, and regardless of which forum it was filed in.  18 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, <u>Federal Practice and Procedure:  Jurisdiction</u>, § 4404 (1981).  The doctrine of <em>res judicata</em>, now called claim preclusion, forecloses litigation of all matters which have been litigated or might have been litigated in an earlier case.  <u>Id</u>.  The rule of collateral estoppel, now termed issue preclusion, precludes re-litigation of issues actually adjudicated.  <u>Id</u>., § 4402.

The landmark case of <u>Allen v. McCurry</u>, 449 U.S. 90, 101 S. Ct. 411, 66 L.Ed.2d 308 (1980) served to bolster the constitutional principle that all federal courts must give preclusive effect to a state court judgment when the courts of the state from which the judgment was rendered would do so.  It is a well established principle that judicial judgments shall be given the "same full faith and credit in every court within the United States and its Territories and Possessions as they have by law or usage in the courts of such State, Territory or Possession from which they are taken."  28 U.S.C.A. § 1738 (2001).

It is also settled law that the applicable rules regarding collateral estoppel are not "federally created, but are those of the state from which the judgment is taken".  <u>Báez Cruz v. Municipio de Comerío</u>, 140 F.3d 24, 29 (1st Cir. 1998) (citing <u>Kremer v. Chemical Constr. Corp.</u>, 456 U.S. 461, 481-82, 102 S. Ct. 1883, 1897-98, 72 L.Ed.2d 262 (1982)); <u>see also</u> <u>Montalvo-Huertas v. Rivera-Cruz</u>, 885

CIVIL NO. 97-2251 (JP)        21

F.2d 971, 974 (1st Cir. 1989); and <u>Cruz v. Melecio</u>, 204 F.3d 14, 18-19 (1st Cir. 2000).  Therefore, if Puerto Rico courts would give preclusive effect to the judgment of a state court, then this Court must also give preclusive effect to said judgment.  <u>Futura Development Corp. v. Centex Corp.</u>, 761 F.2d 33 (1st Cir. 1985).  In Puerto Rico, judgments can be given preclusive effect if they are final and on the merits.  <u>See Millán v. Caribe Motors Corp.</u>, 83 P. R. Dec. 474 (P.R., 1961); <u>Manrique v. Aguayo</u>, 37 P. R. Dec. 314, 320 (P.R., 1927); <u>Stitzer v. University of Puerto Rico</u>, 617 F. Supp. 1246, 1254 (D. Puerto Rico 1985).

        a.  <u>Finality for the application of preclusion</u>

On April 22, 1997, Mayor Ferdín Carrasquillo, on behalf of the Municipality of Loíza, filed a Petition in the Commonwealth of Puerto Rico Court of First Instance, Carolina Part, to enjoin Plaintiffs from further sand removal.  On June 11, 2001, the Supreme Court of Puerto Rico (hereinafter, the "Supreme Court") rendered its Judgment in said case.  The question in this instance is whether the judgment of the Supreme Court is "final" and "on the merits".

In most states, the judgment of any lower court is considered final immediately and thus, immediately appealable.  <u>See</u> 18 Wright, Miller & Cooper, <u>Id.</u> at §4433.  However, because the federal court is bound by state law when the judgment in question was rendered by a state court, <u>Allen v. McCurry</u>, 449 U.S. at 96, in some jurisdictions, the federal court sitting in that jurisdiction will honor the state rule that no preclusive effect will be given the

CIVIL NO. 97-2251 (JP)              22

judgment until it becomes final on appeal.  See Eichman v. Fotomat Corp., 759 F.2d 1434, 1439 (9th Cir. 1985).  This is the case in Puerto Rico.

The idea that a judgment is not final until fully resolved on appeal is reinforced by the Puerto Rico Rules of Civil Procedure. Unlike the Federal Rules of Civil Procedure, which presume the finality of a trial court judgment unless a party files a motion to stay the effect of the judgment, See Fed. R. Civ. P. 62, Puerto Rico Rule of Civil Procedure 53.9 states that a judgment of a lower court is automatically stayed once it is appealed.  "Once an appeal or petition for review is filed, all further proceedings in the lower court regarding the judgment appealed from ... shall be stayed." 32 P. R. Laws Ann. Ap. III R. 53.9 (2000).  Therefore, a judgment is final during the pendency and until the resolution (and reconsideration) of an appeal has been dealt with by the court.

As applied to the case at bar, the Supreme Court issued its Judgment regarding the Commonwealth case on June 13, 2001. Defendants Estates sought reconsideration twice, as they were entitled to under the law of Puerto Rico.  See 4 P.R. Laws Ann. Ap. XXI-A R. 45 (2000).  On August 21, 2001, and again on September 5, 2001, the Supreme Court denied the Estates' motion for reconsideration.  Therefore, under the law of Puerto Rico, the judgment is final, and undoubtedly on the merits, since it completely disposed of the injunction issue.  Thus, in the case at bar, since the judgment at issue rendered by the Puerto Rico Supreme Court is

CIVIL NO. 97-2251 (JP)                23

final and was on the merits, this Court is bound by the law of Puerto

Rico in applying the *res judicata* doctrine.

31 P. R. Laws Ann. § 3343 (2000), the *res judicata* statute,

provides:

> Only a judgment obtained in a suit for revision shall be effective against the presumption of the truth of the *res judicata*.
>
> In order that the presumption of the *res judicata* may be valid in another suit, it is necessary that, between the case decided by the sentence and that in which the same is invoked, there be the most perfect identity between the things, causes, and persons of the litigants, and their capacity as such.

Although the statute itself only discusses *res judicata*, now

more commonly known as claim preclusion, it has also been interpreted

to include what was previously known as *collateral estoppel*, which

courts now term issue preclusion. Báez-Cruz 140 F.3d at 29; Texaco

Puerto Rico, Inc., v. Medina, 834 F.2d 242 (1ˢᵗ Cir. 1997), (citing

A & P Gen. Contractors v. Asociación Cana, Inc., 10 P. R. Ofic.

Trans. 987, 995-96 (P.R. 1981)).

Under Puerto Rico law, it has been established that the party

asserting claim preclusion or *res judicata* must establish: (1) the

existence of a prior judgment on the merits which is "final and

unappealable," De Jesús v. Guerra Guerra, 105 P. R. Dec. 207 (P.R.

1976); (2) the perfect identity of thing or cause, and (3) the

perfect identity of parties and the capacity in which they acted.

Boateng v. Interamerican University, Inc., 201 F.3d 56 (1ˢᵗ Cir.

2000). Defendants allege that all these factors are present in the

CIVIL NO. 97-2251 (JP)                24

case at bar, that *res judicata* therefore applies to the Commonwealth court judgment, and that consequently, this action must be dismissed.

> b.    <u>Finality for the application of *Res Judicata*</u>

The established federal rule is that a judgment can bar future claims under *res judicata,* even while a decision is pending on appeal.  Wright, Miller & Cooper, <u>Id.</u>, at § 4433.

> This federal rule of finality of judgment for
> *res judicata* purposes follows logically from the
> Federal Rules of Civil Procedure, Rule 62(c),
> and the Rules of Appellate Procedure, Rule 8,
> which presume a district court judgment to be
> final and enforceable unless an application for
> stay and a supersedeas bond are presented in the
> first instance to the district court.

<u>Vega Arriaga v. J.C. Penney, Inc</u>., 658 F. Supp. 117 (D. Puerto Rico 1987).

However, under Puerto Rico law, as previously stated, a judgment is not final during the pendency and until the resolution of an appeal.  Several of the Puerto Rico Supreme Court's opinions state specifically that in order to be given *res judicata* effect, a judgment must be "final y firme", or "final and unappealable." <u>Rivera v. Insurance Co. of Puerto Rico</u>, 103 P.R. Dec. 91 (P.R. 1964); <u>Sucesión de Pablo Zayas Berríos</u>, 90 P.R. Dec. 551 (P.R. 1964).  The analysis in this instance is the same as section "a" above, <u>Finality for the application of preclusion</u>.  Therefore, the Judgment rendered by the Supreme Court of Puerto Rico is also final and unappealable for *res judicata* purposes.

CIVIL NO. 97-2251 (JP)                25

c.    <u>Identity of thing or cause</u>.

It is evident, from the Judgment of the Puerto Rico Supreme Court, that the cause, facts and claims upon which the Municipality based their complaint in the Commonwealth court are, in fact, the same as the cause and claims stated in the case before this Court. The Municipality's cause in the Commonwealth forum centered on the fact that the Estates were endangering the flora, fauna, environment and welfare of the people in the Municipality, and that the Estates had an illegal permit (or rather, lacked a proper permit) to carry out their sand removal operations.    Therefore, the Municipality requested an injunction, which is an extraordinary remedy and requires the careful consideration of a number of factors.    <u>See</u> <u>United States v. Oakland Cannabis Buyers' Coop.</u>, 532 U.S. 483, 121 S. Ct. 1711, 1720, 149 L.Ed.2d 722 (2001); <u>U.S. v. Massachusetts</u> <u>Water Res. Auth.</u>, 256 F.3d 36 (1st Cir. 2001).    The Estates' cause, in this Court, centers around the fact that while the Mayor and the Loíza citizens protested in front of the property, in violation of the Estates' rights, the police remained impassive to said violations.

The Estates allege that the two cases are separate and distinct actions grounded on different legal bases and therefore, the required identity of object and cause between the Commonwealth court judgment and the suit herein is lacking.    The Estates misconstrue the cause element for purposes of *res judicata*.    Citing the landmark case of <u>Lausell-Marxuach v. Díaz de Yañez</u>, 103 P. R. Dec. 533 (P.R. 1975),

CIVIL NO. 97-2251 (JP)              26

the Municipality points out that it was the sand removal that gave rise to both this case and the Commonwealth case, and consequently, that perfect identity of thing or cause exists.

In Lausell, "cause" is defined as "the principal ground, the origin of the actions or exceptions raised and decided, and it must not be mistaken for the means of proof nor *for the legal grounds* of the claims adduced by the parties", while "thing" is termed "the object or matter over which the action is exercised" (emphasis added). Lausell-Marxuach at 535-36. While the Commonwealth action and the present action may be premised upon different *legal theories* (an injunction versus a civil rights violation), they both *arose* from the same set of facts - the Estates' sand removal activities from the project. It was from said activities that the Estates claim that the Municipality and the other co-Defendants allegedly violated their rights. Thus, this Court fails to see how the Estates can allege that both these causes of action could possibly be termed as different, when both causes of action did, in fact, arise from the sand removal controversy itself. Therefore, the required identity of object and cause between the Supreme Court judgment and the suit herein is present for *res judicata* purposes.

d.   Identity of parties

Plaintiffs Estates correctly point out that the present action contains new parties that were not part of the Commonwealth action-Colonel Correa, his wife and their conjugal partnership, as well as Superintendent Toledo, his wife and their conjugal partnership. They

CIVIL NO. 97-2251 (JP)              27

also allege that, although Mayor Carrasquillo and Secretary Pagán were a part of the Commonwealth proceedings, the first having been brought through a Counterclaim and the second by way of a Third-Party Complaint both filed by the Estates, the civil rights claims in this case could not have been brought against them in the Commonwealth case.  This Court agrees, and this therefore signs the death-knell for Defendants' preclusion allegations.

Defendants rely on <u>Futura Dev. Corp. v. Centex Corp</u>., 761 F.2d 33 (1st Cir 1985) for the proposition that Puerto Rico's mutuality requirement is not a strict one; rather, that some courts have liberally interpreted said requirement.  Consequently, they allege that the parties in both cases are the same.  However, that case is easily distinguishable from the case at bar.

In <u>Futura</u>, the First Circuit held that *res judicata* barred Futura Corporation from re-litigating a second claim, even against different parties, because the "new" parties to the second suit were <u>subsidiaries</u> and <u>agents</u> for the defendant in the original suit, which is not the case here.  <u>Id</u>. at 43-44.  In this case, the Court cannot see how Colonel Correa and Superintendent Toledo, their respective spouses and their conjugal partnerships, could ever be considered legal representatives, or successors in title to Mayor Carrasquillo or Secretary Pagán as required under 32 P.R. Laws Ann. § 3343.  In fact, this Court cannot see how they can be considered anything but a completely different party.  Therefore, <u>Futura</u> is not applicable to the case at bar.

CIVIL NO. 97-2251 (JP)          28

Báez Cruz, 140 F.3d at 27, another important case that stood for the same proposition, is also distinguishable on the grounds that in said case, the first action was an administrative case which held that the terminations and disciplinary measures taken against certain municipal employees had been lawful. However, the second action was brought by employees, claiming § 1983 violations that were necessarily based on the terminations and disciplinary measures. Id at 28. Therefore, that court reasoned that any suit against a new party was based on the same issue as the administrative case: that plaintiffs' civil rights were violated when they were discharged or disciplined. Id. at 31. Upon finding that the discharge was valid, the federal court could not possibly find that defendants had violated plaintiffs' rights when they were discharged, since such a finding necessarily had to be premised on an illegal discharge.

In the case at bar, Plaintiffs Estates still had a right to due process before their protected interest was taken away, to enter and freely exit their property and to be free from physical restraint, and to contract with whomever they pleased. In essence, this Court could hold that Defendants violated Plaintiffs' constitutional rights, if that turns out to be the case, without contradicting the Puerto Rico Supreme Court ruling that the permits were invalid. Thus, Defendants' arguments in this regard are unavailing. In finding that the requisite identity of parties is lacking, this Court therefore holds that res judicata cannot apply in the case at bar.

CIVIL NO. 97-2251 (JP)            29

e.  <u>Full and Fair Opportunity to Litigate</u>

Plaintiffs Estates also allege that this case should proceed because they could not bring forth their civil rights claims in the Commonwealth court.  Indeed, the notion of due process imposes an added requirement in order for *res judicata* to apply:  the precluded party must have had a full and fair opportunity to litigate their case in the earlier proceeding.  <u>Allen</u>, 449 U.S. at 95; <u>Cruz v. Melecio</u>, 204 F.3d at 19; <u>Massachusetts Sch. of Law at Andover v. American Bar Ass'n</u>, 142 F.3d 26, 39 (1st Cir. 1998); <u>Medina v. Chase Manhattan Bank</u>, 737 F.2d 140, 145 (1st Cir. 1984).

In the Commonwealth case, the Municipality as a Plaintiff brought a claim seeking injunctive relief against the Estates.  In this case, the Estates as Plaintiffs brought a civil rights action claim against the Municipality.  In the Commonwealth case, the Supreme Court entered judgment ordering the Estates to cease all sand removal operations until they obtained all the necessary permits. The Estates requested Reconsideration and were denied.  Therefore, said Judgment, as more fully explained in section "a" and "b" above, is final and unappealable.

It is clear from this that the Municipality had its day in court, <u>but only as to the issues brought forth by the injunction</u>, which was the only one actually decided by the Puerto Rico Supreme Court.  The preliminary injunction is a final judgment on the merits, but only regarding the limited issue presented by the injunction - whether the Estates' permit was valid.  See <u>Hayes v. Ridge</u>, 946 F.

CIVIL NO. 97-2251 (JP)              30

Supp. 354 (E.D. Pa. 1996).  The Estates now request this Court
continue this action to litigate a civil rights cause of action,
different from the injunction cause of action, against additional
parties that could not have been joined in the Commonwealth action.
This in no way goes against the Commonwealth court's determination
that the Estates had to perform an environmental impact statement in
order to extract sand.  Plaintiffs Estates simply have not had their
day in Court regarding their civil rights claim.

    Although *res judicata* precludes claims that actually were
brought (the injunction) or might have been brought in the first
claim (arguably, the Estates' civil rights claims), a proceeding to
determine whether or not to grant an injunction is an extraordinary
remedy granted only in rare instances.  <u>United States v. Oakland
Cannabis Buyers' Coop.</u>, *supra*; <u>U.S. v. Massachusetts Water Res.
Auth.</u>, *supra*.  It requires a careful balancing of several very
specific interests.  It is hardly the forum to bring about § 1983
claims against the Mayor and new parties that were not originally
part of said cause of action (i.e. Superintendent Toledo and Colonel
Correa).  Therefore, it is evident that Plaintiffs' civil rights
claims could not have been brought in the Commonwealth proceeding.

    Finally, the issue preclusion variant of *res judicata* (or
collateral estoppel), which might apply in this instance if the claim
preclusion variant of *res judicata* could not apply, <u>See Schneider v.
Colegio de Abogados de Puerto Rico</u>, 670 F. Supp. 1098 (D. Puerto Rico
1987), precludes re-litigation of issues that were actually litigated

CIVIL NO. 97-2251 (JP)              31

and adjudicated.  Wright, Miller & Cooper, <u>Id.</u>, § 4402.  As far as this Court can ascertain, the only issue litigated and adjudicated in the Commonwealth proceeding was the injunction claim, which conclusively decided only the permits issue.  Therefore, no bar exists to pursue the present civil rights claim.  Plaintiffs Estates have not had a full and fair opportunity to litigate said claims, and thus, this Court holds that this action is not precluded by the Commonwealth court case.

### f.    <u>Public Policy - Ends of Justice</u>

The Court would like to end this discussion with what is perhaps the most important factor in this case - the public policy exception that true justice oftentimes compels a court to utilize unorthodox means to adjudicate cases.  Assuming, *arguendo*, that *res judicata* did apply to this case, under the landmark case of <u>Pagán-Hernández v. University of Puerto Rico</u>, 107 P.R. Dec. 720 (P.R. 1978), the Supreme Court of Puerto Rico has recognized several exceptions to the *res judicata* rule, the most notable being the public policy exception.

The <u>Pagán</u> case centered on a dismissal of a student from the University of Puerto Rico based on his participation in a violent protest which resulted in the death of a police officer.  <u>Id</u>.  An administrative proceeding was held, which resulted in the dismissal of said student.  <u>Id.</u>  The Supreme Court, in a second action, undertook to determine whether the result of the administrative proceeding, the dismissal, was *res judicata* and therefore prevented them from examining the sufficiency of the evidence to sustain the

CIVIL NO. 97-2251 (JP)                32

holding of the first case.   Id. at 731-32.   The Supreme Court held

that the prior claim was not *res judicata* because of the unique facts

of the case; a case where fundamental rights were involved.   Id. at

737-38.

The Supreme Court cited the well-established exceptions under

Puerto Rico law to the *res judicata* rule, citing Figueroa v.

Municipio de San Juan, 98 P.R. Dec. 534, 556 (P.R. 1970); Feliciano

Ruiz v. Alfonso Dev. Corp., 96 P.R. Dec. 108, 113 (P.R. 1968); Pérez

v. Bauzá, 83 P.R. Dec. 220, 225 (P.R. 1961); Suárez Fuentes v.

Tribunal Superior, 88 P.R. Dec. 136, 151 (P.R. 1963);  Rodríguez v.

Sucesión Pirazzi, 89 P.R. Dec. 506, 518-520 (P.R. 1963); Riera v.

Pizá, 85 P.R. Dec. 268, 274 (P.R. 1962; Millán v. Caribe Motors

Corp., 83 P.R. Dec. 494, 505 (P.R. 1961); Vera V. Comisión Hípica,

81 P.R. Dec. 707, 720 (P.R. 1960); Tartak v. Tribunal de Distrito,

74 P.R. Dec. 862, 870 (P.R. 1953) and Vidal v. Monagas, 66 P.R. Dec.

622, 631 (P.R. 1946)).

The Puerto Rico Supreme Court declared that since a fundamental

right was involved, the student's right to education, which is a

fundamental right under the Puerto Rico Constitution (See P.R. Const.

§ 5), then the waiver of said right could never be presumed.   Pagán-

Hernández, 107 P.R. Dec. at 738.

> Every person has a right to an education that
> furthers the development of his personality and
> the strengthening of respect for mankind's
> rights and fundamental rights.  This allegation
> cannot be discarded by saying that appellee
> waived them because he failed to comply with the
> timetables as set forth in the administrative
> rules.  Waivers of fundamental rights are never

CIVIL NO. 97-2251 (JP)                33

> presumed.  They must be express, never presumed,
> and voluntary and performed with full knowledge.
> (Citations omitted.)  (Court translation)

Id. at 737-38.  The Puerto Rico Supreme Court further held that, upon

an examination of the facts of the case, which is necessary in all

cases, they could not apply res judicata to that case.

> To refuse to investigate the sufficiency of the
> evidence to justify the permanent dismissal of
> appellee as a University of Puerto Rico student
> on the basis of the doctrine of res judicata
> would operate in this case as an auto-limitation
> for technical reasons, which we must overturn
> for reasons of justice.  (Court translation)

Id. at 738.  Therefore, the Puerto Rico Supreme Court held that res

judicata did not apply in that instance.

     The United States Supreme Court, as well as the First Circuit,

are no strangers to preventing the application of res judicata where

other practical concerns outweigh the traditional ones and favor

separate actions.  See Brown v. Felsen, 442 U.S. 127, 99 S. Ct. 2205,

60 L.Ed.2d 767 (1979); U.S. v. American Heart Research Found., Inc.,

996 F.2d 7, 11 (1st Cir. 1993) (allowing the government to bring a

second action for damages, whatever the underlying theory, even

though the government had already brought and concluded a previous

action under 18 U.S.C. § 1345).

     In the case at bar, several fundamental rights are alleged to

have been violated:  the right to due process, the right to liberty

and freedom from restraint, and the right to freely contract.  The

fact that the violations of these fundamental rights are alleged to

have been caused by state officials - two police officers, including

CIVIL NO. 97-2251 (JP)            34

the Police Superintendent, the Secretary of an administrative agency, and the mayor of a town - seems to exemplify the dangerous philosophy which seems to have become the norm on our island, that ours is a government of men and not of laws. Therefore, allegations that state actors, who are held to a higher standard than ordinary citizens, have transgressed the boundaries of their powers and have allegedly violated the fundamental rights of said citizens, are very serious. Therefore, this Court holds that, even if *res judicata* could apply as a bar to this case, which the Court does not believe it does, the ends of justice would most certainly justify the continuation of these proceedings. Defendants' arguments are unavailing.

    C.    Qualified Immunity

    The doctrine of qualified immunity protects government officials who perform discretionary functions from suit and from liability for monetary damages under 42 U.S.C. § 1983. See Roldán-Plumey v. Cerezo-Suárez, 115 F.3d 58, 65 (1st Cir. 1997). This defense is designed to create a rebuttable presumption of qualified immunity to cover all executive officers that perform discretionary functions. Id.; Scheuer v. Rhodes, 416 U.S. 232, 94 S. Ct. 1683, 40 L.Ed.2d 90 (1974).

    The general rule regarding qualified immunity is that government officials are immune from suit when their conduct does not violate clearly established statutory authority or constitutional rights, which a reasonable person should have known of at the time of the conduct at issue. Mitchell v. Forsyth, 472 U.S. 511, 524, 105 S. Ct.

CIVIL NO. 97-2251 (JP)          35

2806, 2814, 86 L.Ed.2d 411 (1985); <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818, 102 S. Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). Furthermore, the "contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." <u>Acevedo-García v. Vera-Monroig</u>, 204 F.3d 1, 10 (1st Cir. 2000).

In other words, the test has two prongs. First, this Court must determine, as a matter of law, whether the constitutional right in question was clearly established at the time of the alleged violation. <u>Hilaire v. Laconia</u>, 71 F.3d 20 (1st Cir. 1995). Second, if it finds that said right was clearly established, the question then remains whether a similarly situated official reasonably "should have understood that the challenged conduct violated" that right. <u>Id.</u> at 24.

In order to defeat the qualified immunity defense, a plaintiff must show that the defendant-official knew or reasonably should have known that the actions he took within his sphere of official responsibility would violate the constitutional rights of the people affected by his actions. <u>Wood v. Strickland</u>, 420 U.S. 308, 322, 95 S. Ct. 992, 997, n. 6, 43 L.Ed.2d 214 (1975); <u>see also Crawford-El v. Britton</u>, 523 U.S. 574, 118 S. Ct. 1584, 140 L.Ed.2d 759 (1998). A plaintiff may not overcome the defense by alleging, even if fortified with evidence, that the governmental official acted in a malicious manner or in some way was improperly motivated. Evidence concerning the defendant's subjective intent is no longer relevant

CIVIL NO. 97-2251 (JP)                36

or part of the qualified immunity defense. Harlow, 457 U.S. at 817;
Crawford-El, 523 U.S. at 588; Wyatt v. Cole, 504 U.S. 158, 112 S. Ct.
1827, 118 L.Ed.2d 504 (1992).

However, the qualified immunity defense can only be raised by
persons sued in their personal capacity, not in their official
capacity. González v. Tirado-Delgado, 990 F.2d 701, 705 (1st Cir.
1993). It has been well established that an official capacity suit
is not really against the governmental actor, but instead, is
actually a suit against the governmental entity. See Kentucky v.
Graham, 473 U.S. 159, 165-66, 105 S. Ct. 3099, 3104-05, 87 L.Ed.2d
114 (1985); Brandon v. Holt, 469 U.S. 464, 471-72, 105 S. Ct. 873,
877-78, 83 L.Ed.2d 878 (1985); Monell v. New York City Dep't of
Social Servs., 436 U.S. 658, 690 n. 55, 98 S. Ct. 2018, 2035 n. 55,
56 L.Ed.2d 611 (1978). Therefore, when a plaintiff seeks relief from
a defendant in his capacity as an officer of the state, qualified
immunity is not a viable defense. See e.g., Wood, 420 U.S. 308, 314
at n. 6,; Rodríguez-Pinto v. Tirado-Delgado, 982 F.2d 34, 38-40 (1st
Cir. 1993). Consequently, this defense is not available to Mayor
Carrasquillo, in his official capacity.

With this standard in mind, the Court now proceeds to analyze
Plaintiffs' claims under the due process, liberty, and freedom to
contract interests, to determine whether Plaintiffs' rights were
clearly established at the time of the alleged violations, and
according to that analysis, to determine whether Defendants are

CIVIL NO. 97-2251 (JP)            37

entitled to invoke the defense of qualified immunity under said standard.

    1.  <u>Mayor Ferdín Carrasquillo</u>

    Co-Defendant Carrasquillo, in his personal capacity, alleges that his picketing in front of Plaintiffs' property on May 8, 9, and 12, 1997, were carried out in the scope of his employment and in the exercise of his First Amendment rights. He therefore argues that he is protected by qualified immunity. Seeking legitimacy, Carrasquillo alleges that he acted only to preserve the environmental health of both the Municipality and its residents, since Loíza had been suffering from indiscriminate sand removal for a number of years to the detriment of its coastline and its residents. Regardless of which defense Mayor Carrasquillo claims, basic rights such as the right to due process, to freely contract and to liberty are fundamental, and it simply cannot be argued that they are not clearly established.

    The Puerto Rico Constitution, which went into effect in 1952, and was closely modeled after the United States Constitution explicitly states that, "The right to life, liberty, and the enjoyment of property is recognized as a fundamental right of man", and that "No person shall be deprived of their liberty or property without due process of law". P.R. Const. Art. II, § 7. Therefore, since at least 1952, it has been clearly established that a person has a fundamental right to liberty and property, and to due process before deprivation of them. In addition, Mayor Carrasquillo, upon

CIVIL NO. 97-2251 (JP)                38

taking oath of office as Mayor of Loíza, swore to uphold the Puerto Rico Constitution, and therefore, should have known that this was the law.  The Court therefore holds that the rights to liberty, property, and to due process were clearly established at the time that the events that gave rise to this cause of action occurred.

Plaintiffs also claim that Mayor Carrasquillo violated their right to freely contract.  It is also a well established constitutional principle that all persons have a right to freely contract that cannot be undermined by the government nor by any private party.  P. R. Const. art. II, § 7; U.S. Const. art. I § 10.

In addition, this principle has been clearly established by case law in the landmark case of Board of Regents v. Roth, 408 U.S. 564, 572, 92 S. Ct. 2701, 2706-07, 33 L.Ed.2d 548 (1972), and clearly cited by this District on more than one occasion, but more recently in the case of Semaphore Entr. Group Sports Corp. v. González, 919 F. Supp. 543, 549 (D. Puerto Rico 1996).

> 'Liberty' and 'property' are terms protected under the Constitution.  Amongst the 'core' liberty interests recognized and included are not merely freedom from bodily restraint but also the right of individuals to contract, to engage in any common occupations of life, to acquire useful knowledge, to marry, establish a home and bring up children and to worship God according to the dictates of . . . conscience . . . .  The right and liberty to contract are, thus, recognized as a liberty interest protected under the due process clause.

Roth, 408 U.S. at 572, 92 S. Ct. at 2706-07.

Consequently, the Court finds that Plaintiffs' rights to due process, to freely contract, to liberty and to freedom from restraint

CIVIL NO. 97-2251 (JP)          39

are core rights that were clearly established at the time the occurrences took place on Plaintiffs' property on May 8, 9, and 12, 1997, and that a reasonable person would have known that they were so established. Acevedo-García v. Vera-Monroig, 204 F.3d 1, 10 (1st Cir. 2000). Plaintiffs have also set forth facts that enable them to bring forth a cause of action under their clearly established right to be free from illegal detention. See Benítez-Pons v. Commonwealth of Puerto Rico, 136 F.3d 54 (1st Cir. 1998).

Consequently, Plaintiffs have properly alleged a theory, within the set of facts averred, that does not allow Mayor Carrasquillo to avail himself of the doctrine of qualified immunity. Since questions of fact remain regarding Mayor Carrasquillo's conduct so as to enable the Court to apply the qualified immunity doctrine, the Court cannot grant qualified immunity at this stage of the litigation. In other words, the Court does not know, nor is it its place to determine, the facts surrounding Mayor Carrasquillo's actions in order to be able to determine whether a reasonable person in the Mayor's position should have known that his conduct violated Plaintiffs' clearly established rights. Until a jury renders a verdict regarding these factual questions, the Court will be unable to make a determination regarding qualified immunity. See Kelley v. LaForce, No. CIV. 00-2543, 2002 WL 181337, at *3 (1st Cir. Feb. 8, 2002); Nieves-Villanueva v. Soto-Rivera, 133 F.3d 92 (1st Cir. 1997).

CIVIL NO. 97-2251 (JP)                40

### 2.   Colonel Carmelo Correa

Plaintiffs do not claim that co-Defendant Correa, like co-Defendant Toledo, violated Plaintiffs' constitutional guarantees by action, but rather by omission.  Plaintiffs claim that Colonel Correa aided or, in the alternative, stood by as the Municipality's mob gathered in front of Plaintiffs' property and prevented entry and exit to and from the same.  Defendants allege that co-Defendant Correa simply evaluated a highly-charged situation and acted in a manner that was least conducive to confrontation.

The Puerto Rico Constitution, as explained before, establishes that liberty is a fundamental right, and that a deprivation of the same cannot be effected without due process.  P.R. Const. Art. II, § 7.   Likewise, the Fourteenth Amendment of the United States Constitution forbids states to deprive individuals of life, liberty, or property without "due process of law."  U. S. Const. amend. XIV. Its very purpose is to protect citizens from abuse of power by the several states.  "Like its counterpart in the Fifth Amendment, the Due Process Clause of the Fourteenth Amendment was intended to prevent government 'from abusing [its] power, or employing it as an instrument of oppression.'"  DeShaney v. Winnebago Cty. Dept. of Social Services, 489 U.S. 189, 195-197, 109 S. Ct. 998, 1003, 103 L.Ed.2d 249 (1989), (citing Davidson v. Cannon, 474 U.S. 344, 348, 106 S. Ct. 668, 671, 88 L.Ed.2d 677 (1986); see also Daniels v. Williams, 474 U.S. 327, 331, 106 S. Ct. 662, 665, 88 L.Ed.2d 662

CIVIL NO. 97-2251 (JP)                41

(1986) (purpose of due process is to secure the individual from the arbitrary exercise of the powers of government).

It is a well-established principle of law that the Due Process Clause does not imply an affirmative duty for the government to protect citizens from private actors. See Harris v. McRae, 448 U.S. 297, 317-318, 100 S. Ct. 2701, 2688, 65 L.Ed.2d 784 (1980). "The Due Process Clause itself [does not] require . . . the State to protect the life, liberty, and property of its citizens against invasion by private actors." DeShaney, 489 U.S. at 195-97. DeShaney concluded that if the State has no affirmative responsibility to prevent a harm caused by private violence, then its officers could not be liable if they failed to stop violence from private actors.

The allegations of the instant case, however, do not present a circumstance where the police failed to protect from private actors. Rather, the harm in the case at hand emanated from a municipal actor. Here Plaintiffs allege that the Mayor of Loíza, a State actor, created a situation in which their rights to liberty and to freely contract were violated, and that the police, another State actor, failed to protect their rights in that situation.

The Fourteenth Amendment forbids a state actor to stand idly by while another state actor violates the constitutional guarantees of the citizenry. Bruner v. Dunaway, 684 F.2d 422, 426 (6th Cir. 1982) (Holding that "a law enforcement officer can be liable under § 1983 when by his inaction he fails to perform a statutorily imposed duty to enforce the laws equally and fairly . . . . Acts of omission are

CIVIL NO. 97-2251 (JP)            42

actionable in this context to the same extent as are acts of commission"). The First Circuit has also held that,

> An important factor in making the determination of liability is whether the official was put on some kind of notice of the alleged violations, for one cannot make a 'deliberate' or 'conscious' choice, Pembaur v. City of Cincinnati, 475 U.S. 469, 483-84, 106 S. Ct. 1292, 1300, 89 L.Ed.2d 452 (1986), to act or not to act unless confronted with a problem that requires the taking of affirmative steps. Once an official is so notified, either actually or constructively, it is reasonable to infer that the failure to take such steps, as well as the actual taking of them constitutes a choice 'from among various alternatives.' Id. at 483. One obvious 'alternative' is to do something to make the violations stop. See Guzmán v. City of Cranston, 812 F.2d 24, 26 (1st Cir. 1987).

Lipsett v. University of Puerto Rico, 864 F.2d 881, 902 (1st Cir. 1988) (Lipsett II). A link between the action taken and liability can be drawn by showing that the defendant "somehow supported, acquiesced or encouraged the [protestors] by remaining impassive." Lipsett II, 864 F.2d at 902-903 (quoting Lipsett I, 637 F. Supp. 789, 800 (D. Puerto Rico 1988) (citations omitted)).

In the instant case, the Police Colonel was actually present and observing another State actor, Mayor Carrasquillo, when the alleged violation of Plaintiff's constitutional guarantees occurred. In this instance, the Court finds that the law establishing Plaintiffs' rights, as in the case of Mayor Carrasquillo, was well established. Furthermore, the Court finds that law is clear that a police officer has a further duty to not violate the law himself, and to also protect a citizen's rights if he perceives another state actor

CIVIL NO. 97-2251 (JP)              43

violating them. <u>See</u> Puerto Rico Police Department Personnel Reg. §
783.1404 (2) 1-10, which indicates that all police officers have a
duty to:

> Protect life and property, to prevent crime and
> chaos, . . . to prevent, discover and follow
> crime . . . to abide by and ensure compliance
> with the laws, rules and municipal ordinances
> . . . to observe and secure the protection of
> the civil rights of citizens . . . to maintain
> at all times exemplary conduct . . . to treat
> the public courteously and to aid all people
> that so require . . . to be punctual in their
> official engagements and diligent in the
> execution of his/her job, acting at all times
> serenely, fairly and justly. (Court
> translation).

Puerto Rico Police Department Personnel Reg. § 783.1404 (2) 1-
10. <u>See also</u> <u>Bruner,</u> 684 F.2d at 426. In addition, an officer must
not "Misuse or abuse his authority, constituting misuse and abuse of
authority the following:    a)  <u>Unreasonable or illegal arrests or</u>
<u>detentions</u>." Puerto Rico Police Department Personnel Reg. § 782.1449
40(a) (Court translation) (emphasis added). These laws were clearly
established in the Police Manual at the time the events that gave
rise to this cause of action occurred.

The Court therefore holds that the law delineating Plaintiffs
rights and Colonel Correa's duties towards Plaintiffs was clearly
established at the time the occurrences took place on Plaintiffs'
property, and that a reasonable person would have known that they
were so established. <u>Acevedo-García v. Vera-Monroig,</u> 204 F.3d 1, 10
(1st Cir. 2000). Consequently, Plaintiffs have, in the case of
Colonel Correa, properly alleged a theory within the case that does

CIVIL NO. 97-2251 (JP)          44

not allow this co-Defendant to avail himself of the doctrine of qualified immunity at this stage of the litigation. As in the case of Mayor Carrasquillo, the Court does not reach the question of whether or not a reasonable person in Colonel Correa's position would have known that his acts would violate Plaintiffs' clearly established rights, since questions remain regarding the facts surrounding Colonel Correa's actions. Once again, that is the exclusive province of the jury, and the Court cannot render a final determination regarding qualified immunity until the jury renders its verdict in this case.

### 3.   Superintendent Pedro Toledo Dávila

In the case of Superintendent Toledo, as in the case of Colonel Correa, Plaintiffs allege the violation of their constitutional guarantees occurred as a consequence of his failure to act. Toledo's involvement in the alleged deprivation of Plaintiffs' rights, however, differs somewhat from Correa's. Plaintiffs aver that they presented the situation to Toledo by letter, but that he failed to act to protect their interests.

The law in this sphere is clear in that in order to bring forth a cognizable claim, Plaintiffs need to allege facts that would permit a fact-based inference that Toledo was guilty of "conduct that amount[ed] to condonation or tacit authorization" of the wrongdoing. Camilo-Robles v. Hoyos, 151 F.3d 1 (1st Cir. 1998) ('Camilo-Robles I'); Camilo-Robles v. Zapata, 175 F.3d 41 (1st Cir. 1999) ('Camilo-Robles II') (stating that supervisory liability requires proof of an

CIVIL NO. 97-2251 (JP)              45

affirmative link to show causation). "To a significant extent, the existence of such conduct depends on the presence or absence of notice". <u>Rogan v. Menino</u>, 175 F.3d 75 (1st Cir. 1999).

Plaintiffs aver that they personally hand-delivered, and also sent via fax, a letter to Superintendent Toledo with detailed information about the occurrences at the property, which, under the Puerto Rico Rules of Evidence, is presumed to have been received.[1] Said three-page letter recounted, in vivid detail, the occurrences at the property and urged the Superintendent to take some sort of action to protect Plaintiffs' rights. The Court finds that Plaintiffs aver sufficient facts from which a rational person might infer that Superintendent Toledo knew (or had some basis for knowing) that some sort of violation of rights was being effected at the property. This is both the notice and the affirmative link that the law requires in order for supervisory liability to attach.

That said, the Court now turns to the questions of whether Plaintiffs' rights were clearly established at the time of the violations occurred on Plaintiffs' property, and it finds, as in the case of Colonel Correa and Mayor Carrasquillo, that they were. The analysis for deprivation of liberty is the same as in the case of Colonel Correa. In addition, Superintendent Toledo had a further

---

[1] Under the Puerto Rico Rules of Evidence, the presumption is "That a letter duly directed and mailed was received in the regular course of the mail". P.R. Rule of Evidence 16.24 (2001). In this instance, no actual mailing occurred, but even more precise, direct, personal hand delivery, as well as delivery via fax, was effected. Therefore, the presumption is that it was received by Superintendent Toledo.

CIVIL NO. 97-2251 (JP)          46

duty to Plaintiffs, as citizens, since the Office of the
Superintendent is responsible for "promulgating, dictating and
establishing public policy, norms and general procedures, both in the
administrative as in the operations phase, to discharge the duties
conferred by law".   Puerto Rico Police Department Personnel Reg.
§ 782.1405 (1).  (Court translation).  Again, this were clearly
established in the Police Manual that was in effect on May 8, 9, and
12, 1997.

     Consequently, the Court holds that Superintendent Toledo cannot
avail himself of the defense of qualified immunity at this stage of
the case.  As with the previous defendants, questions of fact remain
at to this defendant's actions, so the Court does not address the
issue of whether a reasonable person in Superintendent Toledo's
position should have known that he would violate Plaintiffs' rights
with his actions.

          4.  Secretary Daniel Pagán

     Plaintiffs allege that Secretary Pagán kept them entangled in
endless and baseless administrative proceedings for three years, in
violation of their due process rights.  Defendants counter that
Plaintiffs' permits became inoperative because of the moratorium
imposed by the Legislature, and further allege that "during said
period, or at present, the DNRE permit originally granted to
Plaintiff expired."  However, under Defendants' theory, the
administrative claim should have been dismissed in 1998, when the

CIVIL NO. 97-2251 (JP)              47

permit expired.  Yet, the administrative proceedings continued until March 14, 2001, and therefore, this argument cannot succeed.

Under § 3.13(g) of the Puerto Rico Rules of Administrative Procedure, a typical administrative case should be resolved in under six (6) months, unless exceptional circumstances are present.   3 P. R. Laws Ann. § 2163(g) (2000).  This is the law in Puerto Rico as of 1988, and was thus clearly established in May 1997 and thereafter. The question of whether exceptional circumstances existed in this instance is a question of fact that must be determined by a jury.

Regarding the Estates' due process claims, it is also a fact, as in the case of Mayor Carrasquillo, that the right to due process is a fundamental right under both the United States and the Puerto Rico Constitution.  P. R. Const. art. II, § 7; U.S. Const. amend V, amend. XIV, § 1.   Therefore, these rights were also clearly established at the time the alleged violations of the Estates' rights occurred in May 1997 at the project site and thereafter.  Therefore, the qualified immunity defense is also unavailing to Secretary Pagán. As in the case of the other co-Defendants, the Court declines to rule on the issue of whether someone in Secretary Pagán's position would have known that his actions would violate Plaintiffs' rights, since there are questions of fact surrounding his conduct.

**IV.  CONCLUSION**

Regarding preclusion, this Court holds that Plaintiffs' claims are not precluded by the Commonwealth proceedings.  The Court also holds that co-Defendant Carrasquillo, in his official capacity,

CIVIL NO. 97-2251 (JP)                48

cannot, as a matter of law, assert the doctrine of qualified immunity.  Regarding the issue of co-Defendants' qualified immunity in their personal capacity, the Court finds that applicable law was sufficiently clear at the time the events of May 8, 9 and 12, 1997 took place, and thereafter, when the alleged violations of Plaintiffs' civil rights occurred, and holds that the co-Defendants cannot avail themselves of the defense of qualified immunity at this point of the litigation.  The Court declines to rule on the issues of whether or not a reasonable person in any of the co-Defendants' positions should have known that his actions would violate the Estates' rights at the time the alleged violations occurred, since questions of fact remain surrounding their conduct that are only proper for a jury.  Only after the jury renders its verdict will the Court be in a position to rule regarding this issue.

**IT IS SO ORDERED AND ADJUDGED.**

In San Juan, Puerto Rico, on this 8th day of March, 2002.

JAIME PIERAS, JR.
U.S. SENIOR DISTRICT JUDGE