IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| SURIMA SUAREZ CESTERO, et al., | * |
| Plaintiffs, | * |
| v. | *   CIVIL NO. 97-2251 (JP) |
| DANIEL PAGAN ROSA, et al., | * |
| Defendants | * |

## VISUAL INSPECTION ORDER

The parties met with the Court on March 14, 2003, in the Municipality of Loíza, for a visual inspection of the site, represented by counsel: José García Pérez, Esq., and A. J. Bennazar Zequeira, Esq., for all Plaintiffs; Laura González Lugo, Esq., for Plaintiff Surima Suárez Cestero; Francisco Acevedo, Esq., for all Defendants in their personal capacity and Abel Robles Cirino, Esq., for co-Defendant Hon. Ferdín Carrasquillo Ayala, in his official capacity.  Co-Defendant Hon. Ferdín Carrasquillo Ayala was also present at the visual inspection.

The Court opened at 10:55 a.m., and the parties identified themselves for the record.  The Court was then shown the property in question.  The property was fenced in with a barbed wire fence, and had an asphalt entrance leading up to said fence.  The Court was informed that the measurements of the entrance were done pursuant to the permit requirements, and consisted of approximately 75 meters arching in towards the property entrance.  After the barbed wire fence, the property was not asphalted.  The entrance consisted of two

CIVIL NO. 97-2251 (JP)                    2

gates, one for entering and the second for exiting the property. The property across the road also belongs to Plaintiff, since the road divided Plaintiffs' property into two farms ("fincas"). A wood structure existed on the property that was used for the sand purchase transactions which was subsequently vandalized and burned down. Past the wood structure, the property consisted of a vast area with lush vegetation and palm trees that had been untouched for some time.

Plaintiffs proceeded to inform the Court about the incident. The same took place both inside and outside the property. The police tow truck and patrol car were located next to the entrance gate, while municipal vehicles were located at the exit to the property (next to the road) and across the road, which is not public property, but also belong to Plaintiffs. Plaintiffs further claimed that the police, in conjunction with Defendants, impeded their exit and access to their property, and in effect held them hostage.

Plaintiffs informed the Court that sand was extracted for only six months before the incidents in the case at bar forced the project to shut down. The Court was interested in knowing how much sand was extracted, and Plaintiffs informed the Court that since the permits indicated the daily sand extraction limit, they could reasonably calculate both the amount extracted and the amount that would have been extracted had the project not been stopped. The Court then ordered Plaintiffs to submit this information to the parties and to the Court within twenty (20) days. However, since the trial in this case will be held before that, the Court hereby **ORDERS** Plaintiffs to submit this information on or before **March 28, 2003**. Plaintiffs

CIVIL NO. 97-2251 (JP)                3

further informed the Court that Plaintiff Surima Suárez was present at the time the events that gave rise to this cause of action occurred and that she would be their main witness.

Defendants informed the Court that there was a Court order in effect to cease all sand extraction while the Temporary Restraining Order hearing was held and the issue decided upon by the state court. They further informed the Court that the police presence and action that took place was for the protection of the parties and in order to avoid any incident. Plaintiffs averred that said order did not exist, and that municipal funds and machinery were illegally utilized in order to carry out Defendants' actions.

Regarding the lake, Plaintiffs informed the Court that according to the permits the size of the same was to be 6 "cuerdas" after one year of continuous extraction, and that its final size was to be 18 "cuerdas". They additionally stated that the sides of the lake were specifically designed to prevent the mud from sliding in. The lake was to be a recreational attraction for the property's residents, and all the housing units were to have access to the same. At this point, the Court ordered Plaintiffs to file the proposed layout of the property with the Court, also within 20 days. Once again, since the trial will be held before that, the Court hereby **ORDERS** Plaintiffs to submit this information on or before **March 28, 2003.**

After the Court inquired, Defendants then informed the Court, that some of the remaining holes in other Loíza properties were larger than the one in the case at bar. They further averred that there was a pattern by developers to extract sand and then leave the

CIVIL NO. 97-2251 (JP)              4

development unfinished, causing great danger to residents and children and leading to the breeding of mosquitoes, and that the protection of Loíza was the reason behind their actions.

Plaintiffs then informed the Court that they had a bond to protect the site from exactly this type of occurrence. The bond, which was the largest ever posted, would force Plaintiffs to restore the property to its original condition if the project could not be finished for reasons beyond their control. They further stated that the sand extraction is not in a coastal area; instead, it is in a stable zone, with no flow in or out of sediment. To further bolster their point, they stated that the road is approximately 900 meters away from the lake, and the project itself is more that 1 kilometer away from the ocean.

As a final matter, the parties informed the Court that the law that extended the maritime zone was passed after the events in this case occurred. The Court recessed at approximately 11:30 a.m.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, on this 24th day of March, 2003.

JAIME PIERAS, JR.
U. S. SENIOR DISTRICT JUDGE